DARNELL v. McNICHOLS.—122 S. W. (2d) 808.

Middle Section. April 16, 1938.

Petition for Certiorari denied by Supreme Court, December 17, 1938.

288

Horace B. Stout and C. B. Lyle, both of Clarksville, for plaintiff in error.

A. B. Broadbent and Austin Peay, both of Clarksville, for defendant in error.

FAW, P. J.  This case is styled in the caption hereof as it appears on our dockets, but, according to the usual practice, it should be styled Joe P. McNichols v. Bailey Darnell, as Joe P. McNichols has brought the case up by an appeal in the nature of a writ of error, and is here complaining of a judgment rendered against him and in favor of Bailey Darnell by the circuit court of Montgomery County, in an action brought by Darnell to recover damages of McNichols for the causes set forth in his (Darnell's) declaration as hereinafter stated.

A jury in the circuit court found the issues in favor of plaintiff Darnell and assessed his damages at $3,000.  The defendant filed a motion for a new trial, embracing all the matters upon which he assigns errors in this court, but his motion was overruled by the trial judge, and judgment was pronounced and entered for plaintiff and against the defendant for $3,000 and all the costs of the cause, and a lien was declared on said judgment to secure the reasonable fees of plaintiff's attorneys.  The defendant thereupon reserved exceptions to the aforesaid ruling and judgment of the trial court and prayed an appeal in the nature of a writ of error therefrom to this court, which appeal was granted by the court and perfected by the defendant.

For convenience, we will continue to refer herein to the parties as plaintiff and defendant, according to their position on the record below.

The plaintiff's declaration is contained in one count, which is as follows:

"Plaintiff, Bailey Darnell, sues the defendant, Joe P. McNichols, for the sum of Ten Thousand ($10,000) Dollars for damages sustained, and for cause of action says:—

"1.  Plaintiff avers that on the 14 day of August, 1909, he, Bailey Darnell, and Miss Mollie Stanfill, were legally married in Montgomery County, Tennessee, and that she was after said date, and is now, the true and lawful wife of the plaintiff; that there has been born to this union eight children, whose names and ages are as follows:  Odesie, age 22, Lucy West, age 17 years, Hugh, age 15 years, Edna, age 13 years, Will T. and L. C., twins, age 8 years, J. B., age 6 years, Jimmie, age 2 years; that up and until October ——, 1933, his wife Mollie Darnell, and all of said children, except ————,

who is married and lives with her husband, lived together at plaintiff's home in District 9 of Montgomery County, Tennessee; that plaintiff is a tenant of the defendant, Joe P. McNichols, and lives on a farm owned by him, situated some four or five miles from where the defendant himself resides; he further avers, that for many years after their marriage, the said Mollie Darnell, made him a good, true, dutiful and devoted wife, and used every means at her command to make their home happy and pleasant, and as the mother of plaintiff's children, she was devoted, always interested in their happiness, comfort and welfare; that during these years of happiness and contentment, he was entitled to, and received from the said wife, every consideration and enjoyed her conjugal society, affection, consortium and association in the fullest degree of a happy union as man and wife.

"Plaintiff further avers, that on or about the first day of January, 1922, the said Mollie Darnell formed an acquaintance with the defendant, Joe P. McNichols, who, wilfully and maliciously resorted to various plans and schemes to entice her affection from him, intending to injure and humiliate plaintiff, and bring him to a low estate and to unbearable grief by wilfully and maliciously depriving plaintiff, of the affection, consortium, association and conjugal society of his said wife. Therefore, poisoned and destroyed her love and affection for him; that the defendant, in his wicked purpose, used money, gifts and other methods to accomplish his adulterous ends and by these methods and schemes he persuaded, overcame and overreached plaintiff's wife, and induced her to become intimate with him, and thus carry on and engage in immoral acts with the defendant, intending to destroy, and did destroy, the home and happy marital relations existing between plaintiff, and his said wife, Mollie Darnell.

"Plaintiff further avers, that the mean, vicious and wilful conduct of the defendant, began about the first day of January, 1922, and that since then he has continued his evil conduct and adulterous designs on plaintiff's wife, and that it is now going on between them; that during the last twelve months preceding the filing of this suit, the defendant came into plaintiff's home, debauched it and brought him to shame; that after plaintiff had reached the point when he could not further endure, the defendant persuaded, enticed and caused plaintiff's wife to leave plaintiff's home, and to remove to the defendant's farm, where he lives, and where she now resides, and where she has resided since and before the filing of this suit, all of which has caused plaintiff much agony and mental suffering; that by reason of these wrongful acts, and evil designs of the defendant, plaintiff's home has been wrecked, ruined and absolutely destroyed.

"Wherefore, for the foregoing alleged wrongs and grievances,

plaintiff sues the defendant, in damages, for the sum of Ten Thousand ($10,000) Dollars, and calls for a jury to try the issues involved.''

To the foregoing declaration, the defendant pleaded the general issue—not guilty.

It is seen that the declaration contains proper and sufficient averments that defendant, by seductive arts, induced plaintiff's wife to engage in criminal conversation with him (defendant) and alienated her affections for plaintiff. There is a distinction between an action for criminal conversation and an action for alienation of affections. It is possible for a cause of action for either to exist without the other. ''While an action for alienation of affections and one for criminal conversation are both founded on the injury to the right of consortium they are generally recognized as essentially different. The gravamen or gist of the action for criminal conversation is the adulterous intercourse, and the alienation of affections thereby resulting is regarded as merely a matter of aggravation, whereas the gravamen in the other case is the alienation of the affections with malice or improper motives.'' 13 R. C. L., p. 1484, sec. 534; see also Stepp v. Black, 14 Tenn. App. 153, 156, and 13 R. C. L., p. 1458, sec. 507.

In view of the distinction above pointed out, it would have been more in accord with the rules of good pleading for plaintiff to state his cause of action for alienation of his wife's affections and his cause of action for criminal conversation in separate counts.

But the defendant went to trial below without objection to the declaration because of duplicity or on any ground, and it will be treated as a sufficient declaration averring both criminal conversation and alienation of affections, with all the incidents attaching to either of these causes of action, in the same manner and to the same extent as if they were stated in separate counts. Middle Tennessee Railroad Co. v. McMillan, 134 Tenn. 490, 504, 184 S. W. 20; American Tobacco Co. v. Zoller, 6 Tenn. App. 390, 394; Grizzard & Cuzzort v. O'Neill, 15 Tenn. App. 395, 401-402; Waggoner v. White, 11 Heisk. 741, 754.

Defendant's first assignment of error is that, ''there is no evidence to support the verdict of the jury.''

After a careful examination and consideration of the entire record, we are satisfied that there is ample evidence therein upon which the jury could find the issues in favor of the plaintiff—both as to criminal conversation and alienation of affections.

We see no occasion to incorporate in this opinion a summary or review of the salacious and nauseating evidence by which the defendant's guilt of the charges contained in the declaration was proved to the satisfaction of the jury. The question presented by the defendant's first assignment of error, supra, is, whether

there is any material evidence to support the verdict of the jury. The statute (Code, Section 10620) requiring written findings of fact has no application to a law case tried to a jury, and in such case it is not important that the opinion of this court contain detailed recitals of the facts disclosed by the evidence. An assignment that there is no evidence to support the verdict of the jury presents a question of law, and not a question of fact, and, on certiorari, the supreme court will consider the evidence in the record de novo. Anderson v. Stribling, 15 Tenn. App. 267; De Kalb County v. Tennessee Electric Power Co., 17 Tenn. App. 343, 67 S. W. (2d) 555; Norman v. Railroad Co., 119 Tenn. 401, 422, 104 S. W. 1088; Mullins v. Stave & Lumber Co., 155 Tenn. 132, 135, 290 S. W. 975; Whitehurst v. Howell, 20 Tenn. App. 314, 329, 98 S. W. (2d) 1071.

The defendant's 2nd, 3rd, 4th, 5th, 6th, 7th and 8th assignments contain seven separate excerpts (one in each assignment) from the charge of the court to the jury, and assert that the court erred in so charging the jury; but there is no attempt in either of these seven assignments of error to state "specifically wherein the action complained of is erroneous, and how it prejudiced the rights of the plaintiff in error," as required by Rule 11, subsection 2, of the published Rules of this court.

However, it has been held that such assignments of error may be considered if the required specifications are contained in a supporting brief and written argument filed with the assignments. But in the instant case the learned and able counsel for the defendant do not discuss the aforesaid assignments of error in the charge seriatim; but content themselves with the insistence that "throughout his charge the trial judge instructed the jury, and emphasized it, that the issue for the jury to determine was whether or not the defendant had had sexual intercourse with the plaintiff's wife;" that parts of the court's charge "made the test of liability adulterous relations" between defendant and plaintiff's wife; that "throughout his charge the trial judge emphasized to the jury that the issue for their determination was whether or not the defendant had had sexual relations with the plaintiff's wife;" that the effect of the charge was that the jury should return a verdict for plaintiff if the defendant had had sexual intercourse with plaintiff's wife, unless she was engaged in such acts "indiscriminately," thus making the test indiscriminate or promiscuous acts of such intercourse and not the voluntary gratification of lust; and that such instructions were contrary to the rule laid down in Wilson v. Bryant, 167 Tenn. 107, 113, 67 S. W. (2d) 133.

We do not think the charge here in question, when considered as a whole, is subject to the criticisms thus offered. The rule laid down in Wilson v. Bryant, supra, upon which defendants counsel rely, is there stated in these words [page 135]:

"The weight of authority is that in alienation suits the plaintiff must establish that the defendant is the enticer—the active or aggressive party. If it deveops that the plaintiff's spouse was merely bent on the gratification of lust, was not particular in the choice of a guilty partner, plaintiff's case is not made out. Likewise we think plaintiff's case would fail if it should appear that for any other reason the plaintiff's spouse was the pursuer rather than the pursued."

It should be observed that Wilson v. Bryant, supra, was an action by a wife against another woman for the alienation of the affections of plaintiff's husband, and, of course, did not involve an action for criminal conversation.

The case at bar was not only an action for alienation of affections, but also an action for criminal conversation, and the question as to whether defendant had had sexual relations with plaintiff's wife vel non became a dominant issue by defendant's sweeping denial in his testimony of any sexual intercourse whatever with plaintiff's wife; and by the absence of pleading and the absence of evidence that plaintiff's wife was the "enticer" (as there was in Stepp v. Black, 14 Tenn. App. 153).

We think it may be seen from some excerpts from the charge (which include practically all of the paragraphs in which it is insisted there was error) that the charge contained no error prejudicial to the defendant.

After a statement of the averments of plaintiff's declaration and defendant's plea, the charge proceeds as follows:

"The theory of the plaintiff in this case is substantially, as set out in the declaration, that he was married in 1909 to Mollie Stanfill, that he and she lived together happily, as man and wife until October, 1933,—sometime in 1933, about August, 1933, that they had 8 children born to their union; that for a number of years he had lived as a tenant on the defendant's place, sometimes at the homeplace, where the defendant lived, and at other times at a place owned by the defendant some five miles away from his homeplace. That for several years before the acts claimed, upon which this suit is based, that the defendant and complainant's wife had been engaged in operating a dairy together, that the complainant's wife was milking some cows belonging to the defendant, that during these many years that he considered the defendant his friend, that on account of his relationship with him as a tenant and the relationship between the plaintiff's wife and the defendant in their being engaged in the dairy business together, that the defendant was at his home frequently, and that he considered the defendant his friend, and their relationship had been amicable and he was welcomed to his home, and he had the utmost confidence in him.

"His theory is that he took advantage of this confidence, and

his welcome to him in having him come to his home, and taking advantage of his friendship in such a way as to seduce and debauch and have immoral relations with complainant's wife. That he had heard rumors of this in August, 1933, and in August, 1933, he found the defendant and his,—Complainant's—wife engaged in the act of intercourse in his own home. That he talked to his wife about it, on account of his own children, and his desire to preserve his home for his children, that he offered to forgive her misconduct with the defendant if she would agree to cease to have further relations with him. That she refused to do so, and for that reason he left her there, and moved to another place, and shortly afterwards the defendant took her to his own place, to a place on or near to the house on his own place, near his own home, and the plaintiff insists in effect, and in brief, that this defendant taking advantage of their friendly relationship, that he debauched his home,—and broke up his home, and took his wife away from him.

"The defendant denies that he ever had any improper relations with the plaintiff's wife. That is, he says he never had anything to do with her at all, and had not, and did not have anything to do with breaking up the plaintiff's home.

"That is the issue for you to determine from the proof—the principal issue in this case is whether or not a preponderance of the evidence shows that the defendant had debauched the plaintiff's wife.

"If you find that to be true by a preponderance of the evidence, and that the plaintiff's wife had made him a good wife etc., up until that time, if you find that the defendant was responsible for and did break up plaintiff's home, and seduce his wife and caused her to leave him, or him to leave her on account of her adulterous relations with the defendant, your verdict will be for the plaintiff.

"If a preponderance of the evidence fails to show that defendant did not have adulterous relations with the plaintiff's wife, then your verdict will be for the defendant. And if a preponderance of the evidence fails to show that on account of the adulterous relations that his home was broken up, then your verdict will be for the defendant.

"If you find that even though they had adulterous relations that it had nothing to do with breaking up his home, and was on the solicitation of his wife,—in other words that the plaintiff's wife ran after him, and solicited him there, then your verdict will be for the defendant.

"It is not necessary to show the means which the defendant used, if he did use any means, to debauch the plaintiff's wife.

"If you find, as insisted by the plaintiff, that he took advantage of the friendship between them, and the privilege, his privilege of being allowed to come into his home, and by solicitation, or gift, or

taking advantage of any means within his power, induced the plaintiff's wife to have adulterous relations with him, and by that means broke up the home of the plaintiff,—then you will find for the plaintiff, and your verdict will so show.''

Then, after instructions with reference to the measure of damages, the preponderance of evidence and the credibility of witnesses, etc., the court charged further as follows:

''The first thing is, if you find from a preponderance of the evidence, if you find that this defendant has gone into plaintiff's home, and did debauch and break it up, and alienated the affections of plaintiff's wife, then you will find for the plaintiff.

''If that is not shown by a preponderance of the evidence, then you will find for the defendant, that is the issue,—the determinative issue in this case. The defendant denies that he had any adulterous relations with plaintiff's wife at all, and the burden is upon the plaintiff to show that he did by a preponderance of the evidence.''

At the conclusion of the main charge, the record states that ''Mr. Stout'' (one of defendant's attorneys) ''handed some requests to charge,'' and ''the court then further charged the jury:''

''Gentlemen of the Jury, before plaintiff can recover in this case, he must show to your satisfaction by a preponderance of the evidence, not only that the defendant had sexual intercourse with plaintiff's wife, but he must go further and also prove to your satisfaction by a preponderance of the evidence, that the defendant alienated the affections of the plaintiff's wife from him, that he was the enticer—the active or aggressive party. If the plaintiff's wife was merely bent on the gratification of her lust, and was not particular in the choice of her guilty partner, plaintiff could not recover, and your verdict should be for the defendant.

''I charge you that that is the law, Gentlemen of the Jury, that it must show that the plaintiff did entice, that the defendant did entice the plaintiff's wife, but it is not necessary to show the means he used, but if from the evidence in this case, you believe that by the association of the defendant with plaintiff's wife, that he induced her to have sexual intercourse with him, and she was not just engaged in sexual intercourse indiscriminately and on account of her lust, and if you find that the defendant did have sexual intercourse with her, then he would be guilty under the allegations in the declaration in this case.''

Although not so stated in the bill of exceptions, it is stated in the brief for defendant that the request tendered to the court by defendant's attorneys contained only the first of the two paragraphs above quoted, and that the second paragraph of the quotation was added by the trial judge mero motu.

After the jury had retired to the jury room, they returned into

open court and asked the trial judge for instructions as to whether they could consider what would be done in regard to the plaintiff's children, and were instructed by the court that they had "nothing to do with that," but would "only decide the issues in this case;" and at that time the court instructed the jury further as follows:

"Gentlemen, I failed to charge you the defendant's insistence in this case, as requested by him. So I charge you as requested that the defendant insists that he was guilty of no misconduct with the plaintiff's wife, and did nothing to induce or cause her to leave the defendant; that the plaintiff became angry with the defendant over a magistrate's lawsuit, tried in Clarksville, and ordered the defendant to get everything he had on the place, on which plaintiff was living, and remove it and to stay away from the place, and ordered his wife not to speak to, or have anything to do with the defendant thereafter. That plaintiff's wife was milking 15 or 20 cows for the defendant, and declined to follow her husband's orders, and that thereupon the plaintiff drove his wife away and they have not lived together since that time.

"In this regard, I charge you, Gentlemen, that if preponderance of the evidence fails to show that the defendant was guilty of misconduct with the plaintiff's wife, or if the proof shows that the plaintiff became angry with the defendant about a Magistrate's lawsuit, and the disagreement and trouble between him and his wife was caused by this, and this caused the separation, and the defendant did not seduce plaintiff's wife, there can be no recovery by the plaintiff in this case. In other words, if the evidence shows that the defendant seduced plaintiff's wife, there will be a recovery.

"If the evidence does not show that the defendant seduced the plaintiff's wife, there can be no recovery. This is the issue for you to determine on your oaths, from the proof in this case."

We think the instructions which we have quoted above from the court's charge constitute a sufficient answer to defendant's criticisms of the charge.

It is argued for defendant that the use of the word "indiscriminately" (which was used once in the charge) when the court told the jury that if plaintiff's wife was "just engaged in sexual intercourse indiscriminately and on account of her lust" plaintiff could not recover, made "the test indiscriminate or promiscuous acts of sexual intercourse and not the voluntary gratification of lust," as the rule is stated in Wilson v. Bryant, supra.

When it is seen that, in the paragraph immediately preceding that in which the word "indiscriminately" was used, the court had just charged the jury (in the language of Wilson v. Bryant, supra) that "if the plaintiff's wife was merely bent on the gratification of her lust, and was not particular in the choice of her guilty partner, plaintiff could not recover," it seems obvious that

the court used the phrase "engaged in sexual intercourse indiscriminately and on account of her lust" as synonymous with the phrase "merely bent on the gratification of her lust and was *not particular in the choice of her guilty partner.*" (The italicizing is ours).

There is no substantial difference between a woman who engages in sexual intercourse "indiscriminately and on account of her lust," and one who engages in sexual intercourse merely for the gratification of her lust and without being "particular in the choice of her guilty partner."

The defendant's assignments numbered 2 to 8, both inclusive, are overruled.

Through his 9th, 10th, 11th, 12th and 13th assignments the defendant asserts that the trial court erred in failing and refusing to give to the jury five special requests seasonably tendered by defendant's attorneys. The five several requests are copied into the five assignments of error (one in each), but neither of the assignments purports to state wherein the refusal thereof was erroneous or how it prejudiced the rights of the defendant; and all that is said on that point in the written argument filed with and for support of the assignments of error is as follows:

"The Trial Judge was specially requested by the defendant to charge the law as set out in Wilson v. Bryant, supra, which special requests were denied (Rec., pp. 157-160). These special requests embodied correct statements of the law and the jury could not understandingly pass on the real issues presented without them, and we insist that for these errors in the charge of the Trial Judge there should be a reversal of this case."

The requests contain substantially correct statements of law applicable to cases of this character, but we find that, so far as material to the facts of this case, they are, in substance, contained in the court's charge given to the jury, and it was, therefore, not error, to refuse to repeat such instructions. Defendant's assignments numbered 9 to 13, both inclusive, are overruled.

The defendant's 14th assignment is based on the action of the trial court in permitting the plaintiff to testify, over the objection of counsel for the defendant, that he had heard in 1933 that illicit relations existed between the defendant and the plaintiff's wife.

The testimony thus challenged was limited to the bare statement by plaintiff that he had, in the first part of the year of 1933 (which was prior to the separation in August, 1933) heard that there were illicit relations between defendant and plaintiff's wife, and it was admitted with the statement by the court to the jury that it was "not competent as proving that any such relations had taken place, just to explain the action of the plaintiff." Through his 15th assignment, defendant says that the court erred in permitting plain-

tiff to testify in detail, over the objection of counsel for the defendant, concerning conversations with Esquire Terrell and Attorney-General Matt G. Lyle about the alleged illicit relations between plaintiff's wife and the defendant. The testimony to which objection was thus made is set out in each of the assignments—14th and 15th.

Plaintiff was permitted to testify that when he heard that there were illicit relations between defendant and his (plaintiff's) wife, he (plaintiff) went and talked to Esquire Terrell about it, and they together went and talked to Attorney-General Matt Lyle about it. The court admitted this testimony, with the statement to the jury at the time that any statement or advice was not competent, but plaintiff's conduct, if he did talk to an attorney, can be shown.

We are of the opinion that the plaintiff's testimony that he heard in the early part of 1933 that there were illicit relations between his wife and defendant was competent to explain his conduct (as stated by the trial judge to the jury), that is, his subsequent conduct in watching his wife and defendant. We are further of the opinion that there was no error in the admission of plaintiff's testimony that he talked with Esquire Terrell and Attorney General Lyle about what he had heard concerning his wife and the defendant. Plaintiff's attitude toward the illicit intimacy of his wife and the defendant was material to the issues, or, at least, as affecting the measure of damages, and his conduct after he heard that such illicit intimacy existed tended to throw light on his attitude. 13 R. C. L. 1475, sec. 526. The defendant's 14th and 15th assignments of error are overruled.

Defendant's 16th assignment is "that the court erred in refusing to set aside the verdict of the jury and to grant the defendant a new trial for the newly discovered evidence which was discovered by the defendant and his counsel after the trial of this case, and which was to the effect that the plaintiff in discussing his troubles with his wife had said to his wife's brother, J. W. Stanfill, that he had never seen anything wrong between his wife and the defendant. This evidence was material for the reason that the plaintiff testified in the trial of this case in August, 1933 when the Wilee farm was being surveyed he had seen his wife and the defendant in plaintiff's home in a compromising position."

The purpose of the alleged newly-discovered evidence was to discredit the testimony of plaintiff Darnell by showing that he had made a statement out of court in conflict with his testimony on the witness stand. Plaintiff testified at the trial that he saw his wife and defendant in a compromising position on August 15, 1933, and that shortly thereafter he went to the home of J. W. Stanfill, his wife's brother, and told him what he had seen, and, on plaintiff's

request, Stanfill went with plaintiff to the latter's home and there talked with plaintiff's wife about the matter. Said J. W. Stanfill was summoned and introduced as a witness for plaintiff.

At the hearing of the motion for a new trial below, the defendant introduced the affidavit of J. W. Stanfill, in which, (after relating the visit of plaintiff to the home of affiant, as previously stated in Stanfill's testimony) the affiant said, "Bailey Darnell went to Oakwood that morning and came back to my house between three and four o'clock that evening and stayed and ate supper that night at my house. After supper Bailey Darnell and I had a further talk in the yard some twelve or fifteen feet from the porch of the house, and in that talk I said to him, 'You know more about this than I do. Have you ever seen anything wrong between your wife and J. P. McNichols,' and to that question Bailey Darnell replied, 'I declare I never have in my life.' I said to him, 'Well, you and your wife ought not to separate but ought to stay together,' and I said to him 'let's go back and have another talk with your wife,' and to that Bailey Darnell replied, 'No, I am going to leave her.' Bailey Darnell never changed that statement to me until after he had sued J. P. McNichols in the circuit court of Montgomery County, Tennessee, for alienating his wife's affections and then after he had brought the suit he did tell me that he had seen McNichols and his wife having intimate relations.

"Mrs. Bailey Darnell is my sister, and it is embarrassing to me to appear as a witness in this lawsuit at all, but I was summoned by Bailey Darnell to testify as a witness for him and I answered truthfully all questions that were asked me, but nobody asked me questions to bring out what I have stated in this affidavit, and for that reason I did not volunteer, but did not do anything but answer questions, and as I understood it, all it was necessary for me to do was to answer the questions asked."

Defendant also filed the affidavit of Sam Stanfill, a son of J. W. Stanfill, in which Sam Stanfill stated, in substance, that he overheard the conversation related in his father's affidavit, and that, in response to a question by J. W. Stanfill, plaintiff stated that he had never seen anything wrong between his wife and McNichols.

The affidavits of defendant McNichols and his attorneys were also introduced, in which they stated that they did not know of plaintiff's said statement to J. W. Stanfill (that he had never seen anything wrong between his wife and defendant) until after the trial and verdict.

We think defendant's 16th assignment of error must be, and it is, overruled for at least two reasons, which may be briefly stated as follows:

(a) One of the able attorneys for the defendant (well known not only for his learning in the law but for his skill and ability as a

trial lawyer) cross-examined J. W. Stanfill on the witness stand before the jury, and this cross-examination contained question and answer as follows:

"Q. When Bailey Darnell came up to see you about your sister, he didn't tell you that he had seen anything improper between them, at all, did he? A. No, sir, he didn't say."

It is seen that the attention of J. W. Stanfill was thus directed to the subject matter of the alleged newly-discovered evidence while he was on the witness stand, and the inquiry as to whether plaintiff did or not tell J. W. Stanfill that "he had seen anything improper between them" (defendant and Mrs. Darnell) was obviously in the mind of the cross-examining attorney at the time he asked the question last above quoted.

In such circumstances, the extent of a witness' knowledge must be ascertained while he is on the witness stand, (20 R. C. L., p. 293, sec. 74; State v. Carr, 21 N. H. 166, 53 Am. Dec. 179, 183); and "the omission of counsel to interrogate the witness as to a fact, is no ground for a new trial." Lowry v. Erwin, 6 Rob. La., 192, 39 Am. Dec. 556, 571.

(b) The grant or refusal of a new trial rests largely in the discretion of the trial judge. Counter affidavits of the plaintiff and his attorney were before the trial judge in this case. The plaintiff flatly denied the material statement of J. W. Stanfill's affidavit, and plaintiff's attorney stated, in substance, that he had talked with J. W. Stanfill repeatedly before the trial of this case, and that, in these conversations, J. W. Stanfill had stated that plaintiff had told him what he had seen.

We do not think the trial judge erred in declining to grant a new trial in this case, and defendant's 16th assignment of error is overruled.

The defendant's 17th (and last) assignment of error is that the verdict of the jury was so excessive as to indicate passion, prejudice or unaccountable caprice.

Defendant's counsel have offered no brief or argument in support of this latter assignment. The verdict implies that the jury accepted the testimony of plaintiff and his witnesses, and upon this evidence the amount of the verdict is, in our opinion, not excessive. Stepp v. Black, 14 Tenn. App. 153, 170. The 17th assignment of error is overruled.

It results that the judgment of the circuit court is affirmed; and judgment will be entered here, in favor of plaintiff Darnell and against defendant McNichols, for $3,000 and the costs accrued below. The costs of the appeal will be adjudged against defendant McNichols and the surety on his appeal bond.

Crownover and Felts, JJ., concur.