Mrs. Irene M. Donnell, Petitioner,

*v.*

Mrs. Emily Nichols Mortimer Donnell, Respondent.

415 S.W.2d 127.

(*Nashville*, December Term, 1966.)

Opinion filed May 5, 1967.

SMITH & SELLERS, Murfreesboro, and HOWARD SWAF-FORD, Jasper, for petitioner.

G. S. RIDLEY, JR., and GRANVILLE S. R. BOULDIN, Murfreesboro, for defendant.

PER CURIAM.

This is an action for alienation of affections. The parties will be referred to as they appeared in the trial court.

Plaintiff, Mrs. Irene M. Donnell, sued the defendant, Mrs. Emily Nichols Mortimer, who is now Mrs. Emily Nichols Donnell, for alienation of affections of plaintiff's former husband, James R. Donnell. There was a jury verdict for the plaintiff in the trial court for $25,000.00 compensatory damages. The trial judge directed a verdict for the defendant insofar as the issue of punitive

damages was concerned. The Court of Appeals reversed the judgment of the trial court and remanded the cause for a new trial, predicating its opinion upon two portions of the charge of the court. We granted certiorari, and we are of the opinion that the judgment of the trial court was correct and that the verdict of the jury should be reinstated.

Plaintiff, Mrs. Irene M. Donnell, was married to James R. Donnell on September 4, 1937, in Franklin, Tennessee. She and her husband resided in Murfreesboro, Tennessee, and their marriage lasted for twenty-five years, until they separated in April, 1962. There is testimony in the record that they had disharmony from time to time in their marriage, but there had never been divorce proceedings or separations, other than illness or trips, over this long period of time.

Plaintiff's husband became acquainted with the defendant, who resided in Mississippi, at the Monteagle Assembly Grounds in Grundy County, Tennessee, in August, 1961. He visited her in Mississippi at sometime in January or February, 1962, and thereafter apparently called or saw her with considerable frequency. Defendant was sufficiently indiscreet to write a series of very affectionate and extremely incriminating letters to the husband of plaintiff over a period of time from March until June, 1962. Unfortunately for the defendant, these letters were discovered by plaintiff, and they were very damaging to the defendant in the trial of the case, contradicting her at many vital points in her testimony, and supplying evidence to support the plaintiff's contentions on almost every phase of the vital elements of the cause of action.

Plaintiff testified that she noticed a decided change in her husband's attitude toward her from and after Feb-

ruary, 1962—which was about the time the series of letters in evidence began. The husband of plaintiff separated from her in April, 1962. He sued her for divorce on July 6, 1962. By cross-bill plaintiff obtained a divorce from him on October 9, 1962. Plaintiff's former husband then married the defendant on November 22, 1962.

We do not find it necessary in this opinion to detail the contents of the more than twenty letters in evidence before us. It is sufficient to say that they were written in the most endearing terms to the then husband of plaintiff, by the defendant, and were written at a time when the defendant undertook to testify to the jury that she hardly knew this man and had seen him on only a few occasions.

■ One of the principal defenses offered in the case was that the husband of plaintiff was the aggressor in this affair, and that he was the pursuer of the defendant. Again, however, the letters of the defendant afforded ample evidence upon which the jury could and apparently did find that the defendant was the aggressor. In addition to the letters, the plaintiff found a glove in her husband's car which was exhibited and which was admitted to be the defendant's glove. One of the letters from the defendant mentioned a tie clasp lost by Mr. Donnell in the defendant's car. The defendant attempted to explain this by saying that Mr. Donnell had borrowed her car in Oxford, Mississippi when she was out of town, although she contended, as the Court of Appeals pointed out, "she had a bare speaking acquaintanceship with him at that time." The Court of Appeals noted that the apparent discrepancies in the testimony of the defendant "were evidently taken into consideration by the jury in arriving at its verdict."

It was the insistence of the defendant in the trial below that the plaintiff had already lost the affections of her husband long before he met the defendant, and that in any event the husband was the aggressor in the affair between himself and the defendant. The former husband of plaintiff, now the husband of defendant, undertook to testify in support of his present wife, and undertook to convince the jury that there had been no affection between himself and his wife for many years prior to their separation. In addition, he testified to numerous acts of infidelity with other women, although there was no testimony offered to indicate that plaintiff was aware of his acts of infidelity.

We agree with the Court of Appeals that there was ample evidence to take this case to the jury and we are of the opinion that the plaintiff offered adequate evidence upon every essential element of the cause of action for alienation of affections. After careful consideration of a motion for a new trial filed before him, the trial judge approved the verdict of the jury. As previously pointed out, he did not submit the issue of punitive damages to the jury, although we are of the opinion that the evidence in the case was probably sufficient to justify the submission of that issue. If error was committed in this respect, however, it was in favor of the defendant.

One of the portions of the charge of the trial judge which the Court of Appeals found to be erroneous was as follows:

The depth of the affection between the plaintiff and her husband is not material *as to the right of the plaintiff in this case to maintain her suit* or to recover an assessment of damages so far as the law is concerned. It makes no difference how little or whether there was

any love at all, as a matter of fact, existing between the plaintiff and her husband, and if it has been shown as a matter of fact that she had little or no love for her husband, *this is not a defense of this cause of action.* (Emphasis supplied.)

The Court of Appeals felt that this charge was misleading. Taken alone, we would agree, but the immediately following paragraphs of the charge must be considered along with the portion above quoted. These paragraphs are:

That would be, that is competent and that is an element which you would consider *in mitigation of damages* if you so find by a preponderance of the proof that the plaintiff is entitled to damages.

Now, gentlemen of the jury, request for charge, I think I have already given it to you, but I am going to explain it to you anyway. Says, in an action for alienation of affections, the defendant is entitled to show that there was no sincere affection between the husband and wife and *thus no damages.*

Now, of course, you will recall I charged you that there was a presumption that there was love and affection, and I charge you further that that presumption could be overcome by competent proof and that's the substance of this. (Emphasis supplied.)

█ It is well settled that the sincerity of the plaintiff's affection for his spouse may be looked to in considering the question of damages in an alienation of affections suit. *Payne v. Williams,* 63 Tenn. 583 (1874).

█ We are of the opinion that the charge of the trial court was correct when viewed in its entirety. The first portion of the charge quoted above stated that the fact

that there was little affection between the plaintiff and her spouse was *not a bar to the action.* The next portion of the charge was an instruction that the jury could consider the lack of affections in mitigation of damages.

The distinction between lack of affections as a complete defense and lack of affections as being in mitigation is well settled, and we are of the opinion that there was no error in this segment of the judge's charge to the jury.

 There is abundant authority in support of the proposition that a third person interferes with a marriage relationship at his peril. Even if the spouses are estranged, there is always a possibility of reconciliation, and a third person has the burden of justifying his actions when he encourages a divorce, or seeks to entice away even an estranged spouse, or to prevent a reconciliation. As is stated in 27 Am.Jur., Husband and Wife sec. 524:

> Depth of affection between the spouses before its alienation by the defendant is immaterial to the cause of action therefor, and, indeed, a want of affection in fact is no defense to the action. Some of the authorities go so far as to hold that even where it is admitted that one spouse has no affection for the other, a third party has no right to interfere or cut off any chance of an affection springing up in the future. * * *

> Conjugal affection sometimes even outlives legal separation, as is proved by many authenticated instances of men and women remarrying after divorce has been obtained. Hence, an action for alienation of affections cannot be defeated because the plaintiff-spouse was estranged or separated from the other spouse before the latter's acquaintance or illicit relations with

the defendant, or before occurrence of the acts of the defendant, alleged to have caused the alienation. The one spouse has a right to the possibility of regaining the conjugal society and affection of the other spouse, and a third person has no right to intermeddle between them even though they are estranged.

See also Restatement, Torts secs. 684, 690.

The trial judge fully and correctly submitted to the jury the question of whether or not the defendant was the pursuer, and the question of whether or not the plaintiff had or had not already lost the affections of her husband prior to his acquaintance with the defendant. We find nothing in the charge inconsistent with prior Tennessee cases, which have stated that the depth of affections between the plaintiff and his alienated spouse could be looked to in considering the question of damages. *Payne v. Williams,* supra.

The Court of Appeals further found error in the following portion of the charge of the trial judge:

In your determination of the amount of the damages that plaintiff may recover for all of the direct and proximate losses occasioned by reason of the wrongful acts complained of including the loss of love and consortium; she may recover for physical pain, if any, the mental anguish, agony, the lacerated feelings, the sensibility, hurt for the family and blow to honor.

The Court of Appeals was of the opinion that in this charge the trial judge permitted the jury to consider elements of damages not proper in a case of this nature. The defendant has insisted that the gist of the action is one for loss of consortium, and insists that consortium in this type of case should be defined strictly as it is

defined in actions brought by a husband for his loss of consortium where his wife has sustained personal injuries through the negligence or other wrongful act of a third person.

 We are not prepared to agree, and we are of the opinion that the elements listed by the trial judge in his charge to the jury were proper in an action of this nature. This is a tort based upon willful and malicious interference with the marriage relation by a third party, without justification or excuse. The title of the action is alienation of affections. By definition, it includes and embraces mental anguish, loss of social position, disgrace, humiliation and embarrassment, as well as actual pecuniary loss due to destruction or disruption of the marriage relationship and the loss of financial support, if any. The only element listed by the trial judge upon which there might be a question as to whether there was sufficient evidence in the present case is that of physical pain. The judge's charge in this connection, however, contained the qualification "if any" and we are of the opinion that there was no reversible error in including this element in that manner.

In Madden, Persons and Domestic Relations, p. 174 (1931), the following statement is made concerning the elements of damages in an action of this nature:

In an action for alienation of affections, the damages include the estimated pecuniary value of the services, support, comfort, society and affection which have been lost, and compensation for the distress of mind and injured feelings. If sexual intercourse occurred, that may be considered in aggravation of damages.

In the Restatement, Torts, sec. 683, comment (b), it is stated:

> The legally protected marital interests of one spouse include the affections, society and companionship of the other spouse, sexual relations and the exclusive enjoyment thereof. In the case of a husband, they include the wife's services in the home. In the case of a wife they include support by the husband.

In a "special note" to this comment it is stated that the word "consortium" is frequently used in judicial opinions

> * * * to indicate all of those interests of the husband or wife in the marriage relation which receive legal protection by rules of law. The word, therefore, is ambiguous and is not used in the Restatement of this subject.

In the case of *Valentine v. Pollak*, 95 Conn. 556, 111 A. 869, 872 (1920), it is stated:

> The gist of both the action for alienation of affections and that for criminal conversation is the same, the loss of consortium. This is a property right growing out of the marriage relation and includes not only the exclusive right to the services of the spouse, and these contemplate not so much wages or reward earned as assistance and helpfulness in the relations of conjugal life according to their station as the exclusive right to the society, companionship, and conjugal affection of each other. * * *

> In addition to such injury and loss, recovery may be had for mental anguish and injury to health, character, and feeling suffered.

In the case of *Hollinghausen v. Ade,* 289 Mo. 362, 233 S.W. 39, 42 (1921), it is said:

> Instruction 6 tells the jury that plaintiff could not recover damages for injury done to her feelings or the loss of support, comfort, and society of her husband and these elements would be withdrawn from the consideration of the jury. These were elements plaintiff could recover for, and hence the instruction was properly overruled.

In the case of *Coates v. Slusher,* 109 Or. 612, 222 P. 311, 317 (1924), an action by a husband for alienation of affections, the Supreme Court of Oregon approved an instruction as follows:

> If you find plaintiff, under the instructions given you, is entitled to recover against defendant, then you should find damages in his favor as will compensate him for the loss of his wife's society, assistance, affection, comfort and companionship for any physical pain or mental anguish, suffering, humiliation or disgrace that he may have endured.

Citations could be multiplied, but we will conclude this portion of the opinion with the following statement found in 27 Am.Jur., Husband and Wife sec. 543, referring to damages in actions of this nature:

> The plaintiff in an action for alienation of affections may recover for all direct and proximate losses occasioned by the tort, including loss of love and consortium, and he or she may recover for any physical pain, mental agony, lacerated feelings, wounded sensibilities, humiliation, blow to honor, hurt to family life, suspicion cast on offspring, etc. A wife may recover for loss of support and extra hardship. In this connec-

tion, the rule has been enunciated that it is proper for the jury to take into consideration the earning capacity and financial status of the husband whose affections have been alienated.

We are of the opinion that there was no error in the charge of the trial court with respect to the elements of damage and that the charge as given is amply supported by authority.

Following the granting of certiorari in this case to plaintiff, the defendant assigned errors in this Court as authorized by statute, T.C.A. sec. 27-823, and we now turn to consideration of the assignments of error made before us by the defendant below.

Three of the assignments of error made in this Court pertain to the action of the trial judge with respect to a property settlement agreement entered into between plaintiff and her former husband in connection with their divorce proceedings. The record before us shows that the attorneys for the defendant examined the plaintiff in detail concerning the contents of the property settlement agreement, and that they filed the entire agreement in evidence as the defendant's exhibit number 5. Upon objection to the cross-examination of plaintiff about the settlement agreement, however, the trial court entered into a colloquy with counsel for the defendant, and the trial judge made a remark at that time that the settlement agreement should be considered by the jury only in fixing any damages to which they might find the plaintiff entitled. The record is then as follows:

MR. BOULDIN: If the Court please, we would like to respectfully request the Court to charge the jury, too, that this is pertinent to the issue of whether or not

this lady was deprived of her support as she claimed as one of the elements of her damages.

THE COURT: That is just what I got through telling them on that, whether she is entitled to it.

Counsel for the defendant have assigned error upon the subsequent action of the trial judge in limiting the examination of the former husband of plaintiff in connection with the property settlement agreement although, as previously stated, the agreement itself had already been filed in evidence and was part of the record. The third assignment on this subject is with respect to the refusal of the trial judge to give a special request in his final instructions to the jury that the allowance of alimony in a divorce proceeding is a ''recognition and enforcement of the divorced wife's common law right to support by the husband.''

We are of the opinion that there was no error in connection with the property settlement agreement, or, if there was error at all, it was in favor of the defendant.

In the case of *Hollinghausen v. Ade,* supra, the defendant in an action for alienation of affections insisted that if the plaintiff made a property settlement in connection with the divorce action, she would be estopped from claiming damages from the defendant tort-feasor. The Supreme Court of Missouri said:

This settlement had nothing to do with the instant case, and defendant was not a party to it; there was no mutuality respecting the matter as between plaintiff and defendant.

Normally, of course, in an action for damages in tort, the fact that the plaintiff has received payments

from a collateral source, other than the defendant, is not admissible in evidence and does not reduce or mitigate the defendant's liability.

Upon examination of the Restatement of Torts, however, we find that in the discussion of damages in actions for alienation of affections, the following statement is made:

If there has been a divorce, any alimony which the wife is awarded or any property settlement by her husband are factors indicating the extent to which she has or has not been deprived of support by the defendant's misconduct. Restatement, Torts sec. 690, comment (b).

■■■ There seems to be a dearth of authority on this subject generally. If, however, the property settlement agreement was admissible for any purpose, it was for the purpose of reflecting upon the extent to which the plaintiff might have already been compensated for loss of support which was one element of her damages. The trial judge permitted the property settlement to be received in evidence and to be considered by the jury for that purpose. Since the agreement was received in evidence and exhibited as part of the testimony, we can see no prejudicial error to the defendant in his not being allow further to testify about the document, which was already fully in the record, and we see no error in the trial court's refusal to charge the abstract legal proposition which was requested.

■■■ As pointed out by the trial judge in one of the discussions of this question with counsel for the defendant, many factors and elements may enter into a property settlement agreement. The fact that her former husband had made payments to the plaintiff would cer-

tainly not be a defense to the defendant on any of the numerous other elements of damages which might be awarded in a case of this sort, such as mental anguish, humiliation, et cetera. If competent and admissible at all, it would certainly be admissible and competent only on the question of the degree of loss of support, and in the present case the settlement agreement was received just for that purpose. The assignments of error relating to this phase of the case are, therefore, overruled.

 One of the assignments of error by the defendant is to the effect that the trial judge erred in admitting evidence of the defendant's former marriage and divorce. It appears, however, that on direct examination of the defendant, her counsel proved her age and that she had a grown son. It would seem, therefore, that counsel for the defendant had opened up the subject of the former marriage and we see no impropriety in the action of the trial judge in permitting counsel for the plaintiff to cross-examine the defendant with respect to the same.

 Defendant also assigns errors as to the action of the trial judge in permitting counsel for plaintiff to cross-examine the defendant concerning certain financial statements which she had filed as exhibits to her discovery deposition. The record shows, however, that counsel for plaintiff were not permitted to go into the details of these statements or to show the jury the contents thereof. Defendant was permitted to explain apparent discrepancies appearing in them, and we find no error in the action of the trial judge with respect to these financial statements. Indeed, we have already indicated that we do not think that it would have been error for the trial judge to have submitted to the jury the issue of punitive damages in this case, and in that event the contents of

the financial statements themselves might well have been exhibited to the jury. This defendant had already been seriously contradicted and impeached in other respects in any event, before the question of the financial statements was ever reached, and we find no reversible error in the action of the trial judge in permitting her to be cross-examined concerning apparent discrepancies or contradictions in the statements which she had filed.

Two assignments of error made by defendant refer to the action of the trial judge in limiting testimony regarding the details of acts of intercourse and other acts of infidelity committed by Mr. Donnell. Mr. Donnell was permitted to testify to a considerable degree concerning this matter and concerning his lack of affection for plaintiff, and we do not find any prejudicial or reversible error in the action of the trial judge in excluding further testimony along this line, particularly since there was no evidence that the plaintiff herself had any knowledge concerning the alleged misconduct on the part of her former husband.

The defendant assigns error on a portion of the charge of the trial judge with respect to the right of a plaintiff to sue one who prevents an estranged spouse from returning, or entices an already estranged spouse not to return. This charge correctly stated the law, as previously pointed out, and there certainly was evidence in the record from some of the letters of defendant, written at or about the time Mr. and Mrs. Donnell separated, which justified this charge. Defendant in some of the letters undertook to counsel with Mr. Donnell as to how much support or alimony his wife should receive in connection with a property settlement, and urged him to

"go on and fight." In one of the letters, which was referred to by the Court of Appeals, the defendant wrote:

> I can see no reason for her to take your life's earnings when there are no children and her father has plenty too. What have you got to lose now? You had better try to salvage something before it is too late. If it were me I would demand an immediate settlement and not give her too much longer to think. You do not have to you know, as no one can prove anything, really. Do what I just said as if it is all yours. * * * Remember sweety, do not ever give up, when you do you are lost forever. People will think a lot more of you if you do put up a fight. I cannot see how they could admire you for letting her have everything. I think she should have a comfortable living, but certainly not all. Women are funny things and the longer they think the greedier they get.

■ The final assignment of error pertains to the alleged excessiveness of the verdict. Of course, damages in an action of this sort, or in any action involving mental anguish, and such intangibles as humiliation, embarrassment, loss of consortium, et cetera, are extremely difficult to assess. The verdict of the jury concurred in by the trial judge is entitled to great weight. *Stepp v. Black,* 14 Tenn.App. 153, 170 (1931); Annot. 36 A.L.R.2d 548 (1954).

■ Although the trial judge excluded punitive damages from consideration by the jury, the very serious discrepancies in which both the defendant and the former husband of the plaintiff were involved and the distasteful nature of some of the evidence ventured by Mr. Donnell may have reflected themselves somewhat in the amount of the verdict. Wholly apart

from this, and viewed from the standpoint of the plaintiff, however, there was ample proof to justify a finding that a marriage of some twenty-five years duration was destroyed by the actions of the defendant. Neither this Court, nor the courts generally, are prone to encourage actions of this nature. In some states they have been abrogated by statute. So long as the right of action subsists, however, it must be enforced by the courts and there certainly was evidence in the record to justify the jury verdict in this case.

The judgment of the trial court is reinstated and the costs are taxed against the defendant.