**Gary Benton LENTZ,
Plaintiff–Appellant,**

v.

**Willis E. BAKER, Jr.,
Defendant–Appellee.**

Court of Appeals of Tennessee,
Eastern Section.

May 16, 1989.

A. Thomas Monceret, Knoxville, for plaintiff-appellant.

J. Randolph Humble, Knoxville, for defendant-appellee.

## OPINION

ANDERSON, Judge.

Plaintiff appeals the jury verdict finding liability but no damage in his alienation of affections suit on grounds the verdict is inconsistent. We affirm.

Gary and Teresa Lentz married in June 1976. As a journeyman boilermaker, plaintiff Gary Lentz experienced lengthy periods of unemployment. When employed, he worked long hours, and at times was required to leave his family and travel to other states to obtain employment. As a result of the long hours, the absences, and the lack of money, the marriage was under stress. Sexual incompatibility and plaintiff's physical abuse of the wife were also problems early in the marriage. Although Teresa Lentz worked toward a nursing degree in those early years, plaintiff did not want her to work, and when she finally

obtained her degree and went to work, she did so against his will.

Sometime in 1979 or 1980, Teresa Lentz began attending the aptly-named Turning Point Baptist Church; met defendant Willis Baker, the church's preacher; and became the church pianist. Plaintiff also joined the church and became very active. He even assisted other church members in the construction of a swimming pool at Preacher Baker's home, defined by the preacher as "church work" on the dubious proposition that it could double as a baptismal fount.

In August 1981, Teresa Lentz and Preacher Baker became sexually involved, a fact known only to themselves. In September 1981, the men of the Turning Point Baptist Church held a meeting and confronted Preacher Baker with rumors concerning his relationship with Teresa Lentz, which he denied. Although plaintiff was present at the meeting, he refused to believe the rumors because of his friendship with Preacher Baker. In late 1983, plaintiff finally became suspicious and confronted Teresa Lentz and Preacher Baker, but received assurances from both that they were not involved in an extramarital relationship.

In February 1984, Teresa Lentz filed for divorce. Later that spring she admitted her relationship with Preacher Baker to plaintiff, and he filed a counter-claim for divorce on adultery grounds in July of 1984. At trial, proof was offered of adultery with several persons, including Baker. The Chancellor granted plaintiff the divorce, as well as custody of the two older children. Custody of a third child, whose paternity was disputed, was awarded to Teresa Lentz.

In March 1987, plaintiff filed a complaint for alienation of affections against Preacher Baker. The case was tried in March 1988, and the jury found in plaintiff's favor on liability; however, no damages were awarded. Plaintiff appeals.

## INCONSISTENT VERDICT

■ Plaintiff contends on appeal that a jury verdict in his favor with damages assessed at zero is internally inconsistent and therefore should be reversed. He argues *Clements v. Veterans Cab Co.* supports his contention. In *Clements,* this Court observed that "a verdict in favor of the plaintiff, with no damages awarded, is erroneous on its face. The mere fact that the verdict is in favor of the plaintiff, without anything else appearing, necessarily requires an award of some damages, even if only nominal damages, in favor of the plaintiff." 48 Tenn.App. 152, 159, 344 S.W.2d 572, 575 (1960). The *Clements* court went on to reverse the judgment and remand it to the trial court for a new trial.

However, the *Clements* court's decision was based on the jury's finding the plaintiff suffered personal injury which "made it incumbent upon the jury to find damages in some amount." By contrast in *Newsom v. Markus,* a personal injury case, the jury awarded no damage and this Court sustained the verdict because, although there was a duty and a breach, the jury found there had been no injury and "did not reach the issue of the amount of damages in her lawsuit." 588 S.W.2d 883, 888 (Tenn.Ct. App.1979).

The tort of alienation of affections is the "willful and malicious interference with the marriage relation by a third party, without justification or excuse." The marital interests protected by the tort "include the affections, society and companionship of the other spouse, sexual relations and the exclusive enjoyment thereof," and services in the home and support. *Donnell v. Donnell,* 220 Tenn. (24 McCanless) 169, 179–80, 415 S.W.2d 127, 132 (1967). Thus, the essence of the tort is an injury to the right of consortium. *Kelley v. Jones,* 675 S.W.2d 189, 190 (Tenn.Ct.App.1984).

Most jurisdictions require that affection be destroyed or impaired as a result of defendant's interference. Restatement (Second) of Torts, § 683 comment c (1977). Tennessee has chosen a different course. The *Donnell* court reaffirmed the rule that the depth or even existence of affection between spouses prior to defendant's interference is not a defense to the action, but "[i]t is well settled that the sincerity of the plaintiff's affection for his spouse may be

looked to in considering the question of damages in an alienation of affections suit." *Donnell*, 220 Tenn. (24 McCanless) at 176, 415 S.W.2d at 131; *Payne v. Williams*, 63 Tenn. 583 (1874). It is a question for the jury as to whether a plaintiff lost the affection of his or her spouse prior to defendant's interference. *Foster v. Copeland*, 27 Tenn.App. 777, 780, 159 S.W.2d 96, 97 (1941).

In *Donnell* the court approved the following trial court jury charge as a correct statement of the law:

> The depth of the affection between the plaintiff and her husband is not material as to the right of plaintiff in this case to maintain her suit or to recover an assessment of damages so far as the law is concerned. It makes no difference how little or whether there was any love at all, as a matter of fact, existing between the plaintiff and her husband, and if it has been shown as a matter of fact that she had little or no love for her husband, this is not a defense to this cause of action. That would be ... an element which you would consider in mitigation of damages.... [T]he defendant is entitled to show that there was no sincere affection between the husband and wife and *thus no damages.*

*Donnell*, 220 Tenn. (24 McCanless) at 176, 415 S.W.2d at 130–31 (emphasis added).

The amount of damages to award is a jury question, and "damages ... involving mental anguish, and such intangibles as humiliation, embarrassment, loss of consortium, et cetera, are extremely difficult to assess. The verdict of the jury concurred in by the trial judge is entitled to great weight." *Donnell*, 220 Tenn. (24 McCanless) at 187, 415 S.W.2d at 135.

The jury examined the proof in this case and determined there were no damages, a verdict approved by the trial judge as the thirteenth juror. We conclude that the jury could so determine under the *Donnell* holding and the proof in the record. We accordingly find the verdict was not internally inconsistent.

## STATUTE OF LIMITATIONS

■ The defendant on appeal argues plaintiff's action should more correctly be characterized as a suit for criminal conversation, subject to a one-year statute of limitations and therefore barred. The tort of criminal conversation "means adulterous relations between the defendant and the spouse of the plaintiff." *Rheudasil v. Clower*, 197 Tenn. (1 McCanless) 27, 30, 270 S.W.2d 345, 346 (1954). Alienation of affections, on the other hand, may be brought without adulterous conduct. *Id.* According to defendant, plaintiff disguised his suit for criminal conversation as an action for alienation of affection in order to benefit from the three-year statute of limitations found in Tenn.Code Ann. § 28–3–105. Defendant contends that alienation of affection claims which are incidental to criminal conversation claims are to be treated as criminal conversation actions, bringing the claim within the one-year statute of limitations in Tenn.Code Ann. § 28–3–104. *Roberts v. Berry*, 541 F.2d 607 (6th Cir.1976). However, *Roberts* acknowledged that the two actions " 'are generally recognized as essentially different,' " and that " '[i]t is possible for a cause of action for either to exist without the other.' " *Roberts*, 541 F.2d at 609 (quoting *Darnell v. McNichols*, 22 Tenn.App. 287, 122 S.W.2d 808, 810 (1938)).

> The gravamen or gist of the action where it is for criminal conversation is the adulterous intercourse, and the alienation of affections thereby resulting is regarded as merely a matter of aggravation, whereas the gravamen in the other case is the alienation of affections with malice or improper motives.

*Roberts*, 541 F.2d at 609 (quoting *Darnell v. McNichols*, 22 Tenn.App. 287, 122 S.W.2d 808, 810 (1938)).

Unlike *Roberts*, plaintiff here based his cause of action solely upon alienation of affection and no claim for criminal conversation was made, nor was the gist of the action only adulterous intercourse. In *Nabors v. Keaton*, 216 Tenn. (20 McCanless) 637, 393 S.W.2d 382 (1965), the court held the action was one of alienation of affection and the three-year statute of limitations applied where plaintiff's complaint al-

leged grounds for criminal conversation as well as alienation of affections.

We conclude plaintiff's cause of action was not time barred by the one-year statute of limitations in Tenn.Code Ann. § 28–3–104 (1980) for criminal conversation actions.

■ Defendant further argues that plaintiff's cause of action falls outside the three-year statute of limitations for alienation of affection cases because he filed his case in March of 1987, more than three years after the cause of action accrued. According to *Stone v. Hinds*, 541 S.W.2d 598, 599 (Tenn.Ct.App.1976), the phrase "from the accruing of the cause of action" in the statute of limitations [1] means "from the time when the plaintiff knew or reasonably should have known that a cause of action existed." Defendant asserts plaintiff reasonably should have known of the alienation of his wife's affections as early as September 1981 at a church's men's meeting, when the preacher paramour was confronted with rumors of the relationship by the men of the church in plaintiff's presence. However,

> [f]raudulent concealment of the cause of action by the defendant tolls the statute of limitations. It begins to run as of the time of the discovery of the fraud by the plaintiff ... [P]laintiff must prove that the defendant took affirmative action to conceal his cause of action and that he, the plaintiff, could not have discovered his cause of action despite exercising reasonable diligence.

*Willis v. Smith*, 683 S.W.2d 682, 688 (Tenn. Ct.App.1984) (citations omitted). The evidence is unrefuted that plaintiff heard the rumors at church, was aware of his wife's visits with defendant, and knew of frequent telephone calls between his wife and defendant. However, when he confronted them about their relationship in late 1983, defendant and Mrs. Lentz assured him "there was strictly nothing going on" and "their involvement was strictly working in the church." Those affirmative actions by defendant, together with his 1981 denial,

---

1. The following actions shall be commenced within three (3) years from the accruing of the cause of action:
   ....

tolled the statute of limitations. We find plaintiff filed his cause of action within three years of its accrual, and defendant's contention is without merit.

## ABOLISHMENT

■ Lastly, defendant argues the tort of alienation of affections should be abolished in Tennessee. The tort had its genesis in early Roman Law when the *paterfamilias,* or head of the household, had an action for violence committed against his wife, children or slaves on the theory they were so identified with him the wrong was to himself. By the Thirteenth Century, the common law had adopted the idea in part, altering it to a damage action for loss of services of the servant because of violence. In 1349, because of the Black Death and the resulting shortage of labor, England enacted a statute requiring compulsory labor and granting a damage remedy for loss of services to an employer whose servant was enticed away. Since the station of a wife under early common law was that of a valuable superior servant of the husband, the action was extended to include the loss of her services by enticement. The action of alienation of affections was first recognized by New York in 1866 and accepted at common law by all of the states except Louisiana. *See generally* W. Prosser, *The Law of Torts*, § 124 (4th ed. 1971). Over the years emphasis shifted away from loss of services toward a recognition of the intangible elements of domestic relations, such as companionship and affection.

In Tennessee the tort of alienation of affections "is the willful and malicious interference with the marriage relation by a third party, without justification or excuse." *Donnell*, 220 Tenn. (24 McCanless) at 179, 415 S.W.2d at 132. "The gist of the alienation of affections tort is the loss of consortium.... Consortium is not a property right in one's spouse; rather, it is a right of each to the company, cooperation, affection, aid and support of the other." *Kelley v. Jones*, 675 S.W.2d 189, 190 (Tenn. Ct.App.1984) (citations omitted).

---

(4) Actions for alienation of affections. Tenn.Code Ann. § 28–3–105 (1980 & Supp. 1988).

Because the action has been peculiarly susceptible to abuse, thirty-five states have abolished or limited it either legislatively or judicially.[2] According to Professor Prosser, the action has "afforded a fertile field for blackmail and extortion by means of manufactured suits in which the threat of publicity is used to force a settlement." He comments that "even genuine actions ... are brought more frequently than not with purely mercenary or vindictive motives"; that it is impossible to compensate for such damage with what has derisively been called "heart balm." W. Prosser, *supra* p. 10, § 124, at 887.

As early as 1890, Massachusetts had rejected the action, and other states began to reject and limit the action in the 1920s. Legal writers were critical of the action, citing its uncertain basis in damages and the fact that damages were largely punitive in nature. They also were concerned that it had no proper place in modern law in view of its history. The action for alienation of affections, as well as criminal conversation, originated in the husband's power over the wife and was initially restricted to the husband alone. With the emancipation of the wife, it was argued that the original basis for both of the actions was removed and should have resulted in their total abolition. Other reasons cited for change lie in the peculiar susceptibility to abuse that both the actions of alienation of affections and criminal conversation are subject. Because sexual behavior is a characteristic which usually distinguishes these actions, it was thought that emotion and moral indignation prevail over considerations of injury in the assessment of damages. Still another reason for abolition was the actions attract disproportionate publicity and as a result of the combination of factors, encourage unfounded claims and induce innocent defendants to enter into extra judicial settlements. Many state legislatures which have abolished the action have cited these reasons. Legal writers have also expressed the opinion that legislative abolishment occurred because of a recognition of changed social concepts of family solidarity and functions. The statutes relax traditional legal controls by recognizing and protecting increased freedom of association between each spouse and the outside world. *See generally* Brown, *The Action for Alienation of Affections*, U.Pa.L.Rev. 472 (1934); Feinsinger, *Legislative Attack on "Heart Balm"*, 33 Mich.L.Rev. 979 (1935).

In the midst of the social ferment of the 1960s, Professor Clark summarized the arguments for abolishment:

The reasons underlying abolition of alienation of affections are many and persuasive. One is the opportunities for blackmail which the action provides, since the mere bringing of the action can ruin the defendant's reputation. Another is that lack of any reasonably definite standards for assessing damages and the possibility of punitive damages makes excessive verdicts likely. Still another is the peculiar light which the whole proceeding throws on the nature of marriage, leaving one with the conviction that the successful plaintiff has engaged in something which looks very much like a forced sale of his spouse's affections. Most significantly of all, the action for alienation is based upon psychological assumptions that are contrary to fact. As has been indicated, viable, contented marriages are not broken up by the vile

---

**2.** Alienation of affection actions have been abolished in the following states: 1) Arizona, 1983–1984; 2) California, 1982; 3) Colorado, 1973; 4) Connecticut, 1983; 5) Delaware, 1974; 6) District of Columbia, 1981; 7) Florida, 1945; 8) Georgia, 1980; 9) Indiana, 1982; 10) Maine, 1964; 11) Maryland, 1984; 12) Michigan, 1935; 13) Minnesota, 1982; 14) Montana, 1983; 15) Nevada, 1979; 16) Oregon, 1981; 17) Texas, 1987; 18) Virginia, 1950; 19) West Virginia, 1983; 20) Wisconsin; 21) Wyoming, 1977; 22) Iowa, 1981; 23) Washington, 1976; 24) Idaho, 1986.

Six other jurisdictions, by statute, have limited the cause of action to permit injunctive relief only and allow no money damages: 1) Alabama, 1975; 2) Florida, 1981; 3) New Jersey, 1952; 4) New York, 1976; 5) Ohio, 1981; and 6) Vermont, 1984.

Oklahoma and Pennsylvania have statutorily abolished the cause of action for alienation of affection with only insignificant exceptions. Arkansas, Kentucky, and Rhode Island have shortened their statute of limitations to one year.

Seichter, *Alienation of Affection: Gone but Not Forgotten*, 10 Fam.Advoc. 23, 45 (1987).

seducer of the Nineteenth Century melodrama, though this is what the suit for alienation assumes. In fact the break-up is the product of many influences. It is therefore misleading and futile to suppose that the threat of a damage suit can protect the marital relationship. For all these reasons the abolishing statutes reflect a sound public policy and ought to be enacted more widely than they are. H. Clark, *The Law of Domestic Relations in the United States*, § 10.2, at 267 (1968).

More recently, the Supreme Court of Iowa judicially abolished the action of alienation of affections in *Fundermann v. Mickelson*, 304 N.W.2d 790 (Iowa 1981), because the court was convinced the action is absolutely useless as a means of preserving families, but instead demeans the parties and the courts. The court reasoned the action was based on an illusion that the action protected families from destabilizing outside influences, and was not a deterrent to misconduct. The court concluded:

In the last analysis we think the action should be abolished because spousal love is not property which is subject to theft. We do not abolish the action because defendants in such suits, need or deserve our protection. We certainly do not do so because of any changing views on promiscuous sexual conduct. It is merely and simply because the plaintiffs in such suits do not deserve to recover for the loss of or injury to "property" which they do not, and cannot, own.

*Fundermann*, 304 N.W.2d at 794.

The Supreme Court of Washington likewise judicially abolished the alienation of affections action, affirming a Court of Appeals decision and approving the following reasons for abolition:

(1) The underlying assumption of preserving marital harmony is erroneous; (2) The judicial process is not sufficiently capable of policing the often vicious out-of-court settlements; (3) The opportunity for blackmail is great since the mere bringing of an action could ruin a defendant's reputation; (4) There are no help-

ful standards for assessing damages; and (5) The successful plaintiff succeeds in compelling what appears to be a forced sale of the spouse's affections. *Wyman v. Wallace*, 94 Wash.2d 99, 615 P.2d 452, 455 (1980).

The last time the Tennessee Supreme Court considered the action of alienation of affections, it commented,

Neither this Court, nor the courts generally, are prone to encourage actions of this nature. In some states they have been abrogated by statute. So long as the right of action subsists, however, it must be enforced by the courts....

*Donnell*, 220 Tenn. (24 McCanless) at 188, 415 S.W.2d at 136 (1967). Twenty-two years have passed since that opinion. Many states have abolished the action in the interim.[3] In 1984 in *Kelley v. Jones*, 675 S.W.2d 189, this Court observed the argument for abolishment was not without appeal, but concluded that "the argument ... is properly addressed to the Supreme Court or the ... legislature." *Kelley*, 675 S.W.2d at 190.

Indeed the action does "diminish human dignity, demeans the participants, inflicts pain upon the innocent, and does not prevent human misconduct." *Wyman v. Wallace*, 15 Wash.App. 395, 401, 549 P.2d 71, 74 (1976). We are persuaded that in the final analysis, the action does not protect marriage or the family—its only real justification—and the harm it causes far outweighs any reason for its continuance. It should be abolished, but regretfully we lack the power to do so. We are bound by the present law. The argument is properly addressed only to the Supreme Court or the legislature, whom we strongly urge to act.

For the foregoing reasons, we affirm the judgment of the trial court and remand. Costs of this appeal are taxed to the Appellant.

GODDARD and FRANKS, JJ., concur.

FRANKS, Judge, concurring.

I concur with Judge Anderson's opinion but wish to emphasize my deeply held con-

---

**3.** Twenty-five states have abolished the action in the fifteen years preceding 1980. *See* Note, *The Suit of Alienation of Affections: Can its Exist-* *ence be Justified Today?*, 56 N.D.L.Rev. 239, 247 (1980).

viction that this cause of action should be abolished.

The foremost reason for abolition lies within its genesis, *i.e.*, as Judge Anderson notes, it is a derivative from an early English compulsory labor statute which concept, whether applied to labor or love, is abhorrent to a free society.

Under our form of representative government it is desirable for the legislative branch to take the lead as legislatures in several states have already done and proposed legislation is presently pending in the General Assembly to abolish the action. However, in my view, the courts have a duty to act especially where, as in this case, it is the courts who have recognized and nurtured the cause of action, not the legislative branch of government.

I echo Judge Anderson's call for the abolition of this anachronism.