518 A.2d 591

**COMMONWEALTH of Pennsylvania**

v.

**Randy SHOEMAKER, Appellant.**

Superior Court of Pennsylvania.

Submitted June 23, 1986.

Filed Dec. 3, 1986.

Albert J. Flora, Jr., Assistant Public Defender, Wilkes-Barre, for appellant.

Joseph Giebus, Assistant District Attorney, Wilkes-Barre, for Com., appellee.

Before OLSZEWSKI, CERCONE and HESTER, JJ.

CERCONE, Judge:

This appeal raises an issue of first impression in our Commonwealth: whether the the Spousal Sexual Assault Statute, of December 21, 1984, P.L. 1210, No. 230, 18 Pa.C.S.A. § 3128 (hereinafter referred to as the "statute"), is unconstitutional as violative of an accused's right to privacy and equal protection under the laws.

Appellant Randy Shoemaker was convicted by a jury on December 12, 1985 of one count of spousal sexual assault, 18 Pa.C.S.A. § 3128(a)(2); one count of involuntary spousal deviate sexual intercourse, 18 Pa.C.S.A. § 3128(b)(1); and one count of simple assault, 18 Pa.C.S.A. § 2701(a)(1). He filed a timely pretrial motion to dismiss the indictment, challenging the constitutionality of the statute, which was denied after a hearing thereon. Following the denial of post-trial motions, appellant was sentenced to a term of imprisonment of eighteen (18) to thirty-six (36) months, the conviction of involuntary deviate sexual intercourse merged with the sexual assault charge for purposes of sentencing. Appellant was placed on probation for a period of two (2) years for the simple assault conviction.

The sole issue raised in this appeal is whether the lower court erred in denying appellant's motion to dismiss the indictment. We find the trial court was correct in its ruling

and, therefore, affirm the conviction and judgment of sentence.

Viewing the facts in the light most favorable to the Commonwealth, the relevant facts are as follows: The victim was the wife of appellant. In July of 1985, the victim and the appellant were residing together but had separated approximately two weeks prior to the date of the incident when appellant moved from their apartment taking some of his personal effects. Despite this separation, the appellant returned to the apartment each day to visit their child. During this period, no sexual relations occurred between the appellant and the victim. On the evening of July 29th, the victim invited appellant to the apartment to discuss custody of their child, at which time the incident occurred.

The victim testified that she and appellant engaged in a heated argument regarding custody arrangements for their child. She told him to leave the apartment and when he didn't comply, she went to the door to call for help. At that point the two engaged in pushing and shoving resulting in an injury to the victim. At some point, appellant came at the victim with a sharp kitchen knife, threatened to harm both her and the child and proceeded to engage in oral and vaginal intercourse with the victim without her consent. She testified that she had ceased struggling with him because he had threatened her with the knife and she was fearful for her own life as well as the life of their child.

## I

■ Appellant here argues that the Spousal Sexual Assault Statute violates his right to privacy as guaranteed by the Bill of Rights in the United States Constitution as applied to the states through the Fourteenth Amendment. U.S. Const. amend. XIV. The right to privacy is not specifically guaranteed in the Fourteenth Amendment. However, as the United States Supreme Court found in *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), "[S]pecific guarantees in the Bill of Rights have

penumbras, formed by emanations from those guarantees that help give them life and substance. Various guarantees create zones of privacy." *Id.* at 484, 85 S.Ct. at 1681 (citations omitted). The present case concerns the relationship of marriage [1] which is one which lies within the zone of privacy created by several fundamental constitutional guarantees. *Accord: Griswold v. Connecticut, supra* (holds the right to privacy protects married persons' access to contraceptives); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (holds the right to privacy protects a woman's decision to terminate her pregnancy); *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (holds the right to privacy protects individuals' freedom to marry person of another race). However, the right to privacy inherent in the marriage relationship is not unrestricted but is, with certain limitations, subject to the state's police power.[2] *See Loving v. Virginia, supra* at 7, 87 S.Ct. at 1821. As the United States Supreme Court has stated,

In a long series of cases this Court has held that where fundamental personal liberties are involved, they may not be abridged by the States simply on a showing that a regulatory scheme has some rational relationship to the effectuation of a proper state purpose. "Where there is a significant encroachment upon personal liberty, the State may prevail only upon showing a subordinating interest which is compelling." *Bates v. City of Little Rock,* 361 U.S. 516, 524, 80 S.Ct. 412, 417, 4 L.Ed.2d 480. The law

1. *See Griswold v. Connecticut, supra* at 495, 85 S.Ct. at 1688:
   The entire fabric of the constitution and the purposes that clearly underlie its specific guarantees demonstrate that the rights to marital privacy and to marry and raise a family are of similar order and magnitude as the fundamental rights specifically protected.

2. In *Commonwealth v. Arnold,* 356 Pa.Superior Ct. 343, 514 A.2d 890 (1986), this court rejected an invasion of privacy argument raised by a defendant convicted of sexual crimes committed on a minor child residing with appellant. While the panel was not absolutely correct in stating that "[t]he right to privacy in the family setting has never been extended to criminal acts in the family or against or with family members", *supra,* 356 Pa.Superior Ct. at 348, 514 A.2d at 892, (spousal sexual assault has been protected), the rationale in *Arnold* is *apropos* to this case. That is, the state may properly regulate certain activities which occur in the home.

must be shown "necessary, and not merely rationally related to, the accomplishment of a permissible state policy." *McLaughlin v. State of Florida,* 379 U.S. 184, 196, 85 S.Ct. 283, 290, 13 L.Ed.2d 222.

*Griswold v. Connecticut, supra* 381 U.S. at 497, 85 S.Ct. at 1688–89 (Goldberg, J. concurring). Appellant asserts that the Commonwealth has not shown a compelling state interest in enacting the statute.

■ We begin by noting that the spousal sexual assault statute, as is true of any other statutory provision, enjoys a strong presumption of constitutionality. *See* 1 Pa.C.S. § 1922(3); *Hayes v. Erie Insurance Exchange,* 493 Pa. 150, 155, 425 A.2d 419, 421 (1981) ("... we must be mindful of the presumption in favor of constitutionality of lawfully-enacted legislation ... [A]n act of assembly will not be declared unconstitutional unless it clearly, palpably and plainly violates the constitution. (citations omitted) Any doubts are to be resolved in favor of sustaining the legislation."). *See also In re Jones,* 286 Pa.Superior Ct. 574, 429 A.2d 671 (1981). As will appear, we have concluded that the statute does not "clearly, palpably and plainly" violate appellant's right to privacy or to equal protection under the laws. Accordingly, we will not declare it unconstitutional.

The state has a compelling interest in protecting the fundamental right of all individuals to control the integrity of his or her own body.[3] The crimes of rape and involuntary deviate sexual intercourse are crimes of violence[4]

---

**3.** When discussing the passage of this piece of legislation, Rep. Harper stated, "I think that we as legislators should make laws to protect those who cannot protect themselves.... So let us go ahead ... and protect women, expecially women, a few men, who cannot protect themselves." Legislative Journal-House 2238 (November 20, 1984). *See generally People v. Liberto,* 64 N.Y.2d 152, 164, 485 N.Y.S.2d 207, 213, 474 N.E.2d 567, 573 (1984) (noting that "[a] married woman has the same right to control her body as does an unmarried woman").

**4.** *See* "To Have and to Hold: The Marital Rape Exemption and the Fourteenth Amendment," 99 Harvard Law Review 1255 (1986): "A 'female perspective,' ... interprets marital rape as involving 'brutality and terror and violence and humiliation to rival the most graphic stranger rape.'" 99 Harv.L.R. at 1261 *quoting* D. Finkelhor, "Marital

clearly within the ambit of the state's power to police. An important function of government is its exercise of its police power for the purpose of preserving the public health and safety and to accomplish that purpose, the legislature may limit the enjoyment of personal liberty and property. *See Fabio v. Civil Service Commission of the City of Philadelphia,* 30 Pa.Cmwlth. 203, 373 A.2d 751 (1976) (termination of police officer's commission for acts of adultery not unconstitutional invasion of privacy); *Commonwealth v. Erb,* 232 Pa.Superior Ct. 94, 332 A.2d 461 (1974) (right to privacy must accede to the interests of criminal law enforcement under exigent circumstances).

The right to privacy within the marital relationship is not absolute and, in this case, must be balanced against the state's interest in protecting an individual's right to the integrity of his or her own body. As the Attorney General succinctly stated in its brief in support of the Commonwealth, "To say that the right to choose one's marriage partner is a fundamental right protected by the right of privacy is not to say that marriage, once entered into, becomes a fortress impervious to any legal action brought by one partner against the other."

Prior to the passage of the Spousal Sexual Abuse Act, marriage was a defense to the charge of rape except in limited situations. *See* 18 Pa.C.S.A. §§ 3103 and 3121. The enactment of the spousal sexual assault statute by the legislature is responsive to a changing view of society and, particularly, to a recognition of the right of a married woman to be secure in her own home.

The enactment of this statute is another step in the continuing erosion of the common law notion of a married woman as chattel. Over the years, the legislature and the courts have invaded the "sanctity of the marital home" for legitimate purposes of public safety. Most notable is the Protection from Abuse Act, Act of October 7, 1976, P.L. 1090, No. 218, 35 P.S. § 10181–10190, which provides reme-

Rape: The Misunderstood Crime", Address to the New York County Lawyer's Association (May 3, 1984).

dies and procedures relating to abuse of a person by another person who resides with them. It has been described as a "vanguard measure dealing with the problems of wife and child abuse." *Cipolla v. Cipolla,* 264 Pa.Superior Ct. 53, 55 n. 1, 398 A.2d 1053, 1054 n. 1 (1979). The act provides for the court to enter a temporary, *ex parte* order evicting the alleged abuser from the home pending a full hearing on the accusation. 35 P.S. § 10186(a)(3). This procedure was upheld in the face of a due process constitutional challenge. *See Boyle v. Boyle,* 12 Pa.D. & C.3d 767 (1979). *Accord: In re Penny R.,* 353 Pa.Superior Ct. 70, 509 A.2d 338 (1986).

Over the years, the legislature has. passed a series of statutes enlarging the rights and powers of married women to contract, to own property, to bring suit, and to have the same power and control over minor children as fathers. *See, for example,* 48 P.S. § 32.1 (repealed) (Married women shall have the same right and power as a married man to acquire, own, possess, control, use, convey, lease or mortgage property of any kind); 48 P.S. § 33 (repealed) (Married women may purchase sewing machines). *See generally* The Substantive Rights of Married Women Acts, 48 P.S. §§ 31–92. The very existence of these statutes evidences that legislation follows the changing tide of societal belief, and properly so.

The abolition of the common law crime of "criminal conversation" further demonstrates how changing societal mores are reflected in the law. A cause of action for criminal conversation was made out upon plaintiff's proof that, while married to plaintiff, plaintiff's spouse and defendant engaged in at least a single act of sexual intercourse without consent of plaintiff. Originally, this cause of action was available only to husband/plaintiffs. In *Karchner v. Mumie,* 398 Pa. 13, 156 A.2d 537 (1959), the court extended the right to bring such cause of action to married women. In 1976, the Supreme Court abolished the tort of criminal conversation calling it an anachronism in today's society. *Fadgen v. Lenkner,* 469 Pa. 272, 365 A.2d 147 (1976). So too, in 1986, to protect a person from criminal

liability for rape or involuntary deviate sexual intercourse merely because the victim was the aggressor's spouse would be an anachronism in todays's society.[5]

## II

We find appellant's claim that the spousal sexual assault statute violates the equal protection clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1, to be untenable and unpersuasive. Appellant argues that while consent is a defense to the crime of rape, the consent "implied" within the marital relationship is not a defense to the charge of rape when the act occurs between spouses. In this respect, appellant argues, married and unmarried persons are treated differently. The logical fallacy in appellant's claim is his equation of "consent" and "implied consent." [6] "Consent", in its commonly understood usage as "agreement as to action or opinion," *Webster's New Collegiate Dictionary* (1973), is available as a defense to both married and unmarried accuseds. The withdrawal of "implied consent" as a defense to one who is accused of sexually assaulting his or her spouse merely places the married accused on the same footing as the unmarried accused. Any claim that appellant is treated unequally is superficial and spurious to say the least. *See generally Singer v. Sheppard*, 464 Pa. 387, 346 A.2d 897 (1975) (The starting points of an equal protection analysis in respect to particular legislation is a determination as to whether the

---

**5.** *See also Hack v. Hack,* 495 Pa. 300, 303, 433 A.2d 859, 860 (1981) (In acting to abolish the doctrine of interspousal tort immunity the Court said: "[A] tortfeasor's immunity from liability because of his marital relationship with the injured party cannot be sustained on the basis of law, logic or public policy. Hence we abrogate the judicially-created doctrine of interspousal immunity.")

**6.** The source of the "implied consent" concept is said to be a statement made by the 17th century English jurist Sir Matthew Hale. He wrote as follows:

[T]he husband cannot be guilty of a rape committed by himself upon his wife, for by their mutual matrimonial consent and contract the wife hath given up herself in this kind unto her husband, which she cannot retract.

1 M. Hale, *The History of the Pleas of the Crown* (1736) at 269. *See, also, Weishaupt v. Commonwealth,* 227 Va. 389, 315 S.E.2d 847 (1984).

state has created a classification for unequal distribution of benefits or imposition of burdens.)

Therefore, the judgment of sentence in this case will be affirmed.