Jerome Howard HANOVER,
Plaintiff/Appellee,

v.

Robert M. RUCH, M.D.,
Defendant/Appellant.

Supreme Court of Tennessee,
at Jackson.

April 15, 1991.

Hal Gerber, Deborah Godwin, Memphis, for defendant/appellant.

Al H. Thomas, Memphis, for plaintiff/appellee.

## OPINION

ANDERSON, Justice.

We are asked to decide whether the common-law tort of criminal conversation should be abolished in Tennessee. The trial court jury found that the defendant had committed the tort of criminal conversation, and awarded the plaintiff compensatory and punitive damages.

The relevant facts are undisputed. The defendant, Robert M. Ruch, M.D., is a gynecologist. The plaintiff is Jerome Hanover, whose wife, Sandra Hanover, was Dr. Ruch's patient. The sexual affair between Dr. Ruch and Sandra Hanover began in late October of 1983, and continued for two years, until November of 1985. Because of the affair and Dr. Ruch's conduct, Jerome Hanover filed a divorce action against Sandra Hanover to end their 31–year marriage, and a civil complaint against Dr. Ruch, alleging three causes of action: criminal conversation, alienation of affections, and medical malpractice.

At trial, the jury returned verdicts for the defendant on the alienation of affection and medical malpractice counts, but found for the plaintiff on the claim of criminal conversation, and assessed compensatory damages of $25,000 and punitive damages of $100,000. The trial court approved the verdicts. The defendant appealed.

The Court of Appeals recommended the abolishment of the tort of criminal conversation, but recognized it had no power to act, and therefore affirmed the trial court. We granted the defendant's application to determine whether or not we should abol-

ish the common-law tort of criminal conversation. We have decided that we should do so because the action is founded upon a property-based theory which has no place in contemporary society, because the social harm it causes far outweighs any justification for its existence, and because the Legislature has declared the action to be against public policy.

## HISTORY

Punishment for adultery[1] began at the time of the ancient Teutons, and varied widely among the different tribes.

> The husband, in most instances, was permitted to kill the lover if he found him in the act. Later, however, there are signs that the outraged husband who found his wife in the act of adultery might no longer slay the guilty pair, or either of them, but might emasculate the adulterer. Most tribes fixed a penalty which the lover had to pay the husband, and among the Anglo–Saxons the amount depended upon the station in life of the husband.

Lippman, *The Breakdown of Consortium*, 30 Colum.L.Rev. 651, 654–55 (1930).

Much later, the Anglo–Saxons, as a part of the development of the early English common law, established the actions of criminal conversation and alienation of affection. These early common-law tort actions originated from actions against third parties by the master for the enticement away of his servants, thereby depriving him of their services. Since the station of a wife under early common law was that of a valuable superior servant of the husband, an action was available to include the loss of her services by enticement. The rationale being that she was his property, just as the servant was his property. Historically, the two actions were somewhat different. The first, enticement (also called abduction), involved assisting or inducing a wife to leave her husband by means of fraud, violence, or persuasion. The injury was considered to be the loss of the wife's services and consortium. Enticement, or abduction, has evolved into what is commonly known today as the tort of alienation of affections. The second tort remedy available to an injured spouse at early common law was seduction, which today is commonly known as the tort of criminal conversation. Unlike enticement or abduction, seduction required an adulterous relationship between the plaintiff's spouse and the defendant, and no physical separation of the husband and wife was required. The purpose underlying an action for seduction was to vindicate the husband's property rights in his wife's person and to punish the defendant for defiling the plaintiff's marriage, family honor, and for placing the legitimacy of children in doubt. Comment, *Stealing Love in Tennessee: The Thief Goes Free*, 56 Tenn.L.Rev. 629 (1989); W. Prosser, *The Law of Torts*, § 124 at 873–75 (4th ed. 1971).

Since the action for criminal conversation is civil, rather than criminal, a legal fiction developed that damages for criminal conversation are compensatory rather than punitive. In *Weedon v. Timbrell*, 5 T.R. 357 (1793), Lord Kenyon held that where a husband lived apart from his wife, he could not maintain a criminal conversation action since the action was not punitive in nature, but compensatory, and since no loss of the wife's services was shown.

In 1818 Lord Byron described the English judicial process of evaluating "what a wife is worth":

> [H]owsoever people fast and pray,
> The flesh is frail, and so the soul undone:
> What men call gallantry, and gods adultery,
> Is much more common where the climate's sultry.
> Happy the nations of the moral North!
> Where all is virtue, and the winter season
> Sends sin, without a rag on, shivering forth
> ('Twas snow that brought St. Anthony to reason);

---

**1.** "In its general and comprehensive sense, the term 'criminal conversation' is synonymous with 'adultery'." *Turner v. Heavrin*, 182 Ky. 65, 206 S.W. 23 (1918).

Where juries cast up what a wife is worth,

By laying whate'er sum, in mulct, they please on

The lover, who must pay a handsome price,

Because it is a marketable vice.

Byron, *Don Juan*, Canto I, LXIII–IV.

In Seventeenth Century England, the criminal conversation action became extremely important, for it was necessary as a condition precedent to the procuring of a divorce through a private act of Parliament. With the establishment of a divorce court having the right to grant a decree of divorce for the adultery of the wife, the action for criminal conversation was no longer needed, and was abolished by statute in England in 1857. 21 Vic. C. 85, § 59 (1857).

The tort of criminal conversation was first recognized in Tennessee by the Court of Appeals in *Stepp v. Black*, 14 Tenn.App. 153 (1931), *cert. denied* March 5, 1932. A *prima facie* case merely requires proof of a valid marriage between the spouses and sexual intercourse between defendant and plaintiff's spouse during coverture. *Rheudasil v. Clower*, 197 Tenn. 27, 270 S.W.2d 345 (1953); *Darnell v. McNichols*, 22 Tenn. App. 287, 122 S.W.2d 808 (1938). Alienation of the spouse's affections is not a necessary element but is regarded as a matter of aggravation. *Darnell, supra.* Consent of the participating spouse is not a defense. It is of no importance that the participating spouse was the aggressor or procures the defendant to have intercourse with her. *Stepp v. Black*, 14 Tenn.App. 153 (1931). The only defense to the action is connivance of the plaintiff. Both knowledge and acquiescence must be shown to establish consent or connivance. Otherwise, recovery is assured upon proof of the marriage between plaintiff and his spouse and an act of adultery occurring between the defendant and plaintiff's spouse during the marriage.

Suits for criminal conversation, like suits for alienation of affections, could only be brought by the husband at early common law. The husband was allowed to sue for criminal conversation in order to vindicate his property right in his wife's person and to punish the defendant for placing the legitimacy of his children in doubt. Due to the wife's disability of coverture, she had no right to bring an action for criminal conversation. This disability was removed by statute in Tennessee and accordingly, a wife can now sue for criminal conversation. Comment, *Stealing Love in Tennessee: The Thief Goes Free, supra.*

## SEPARATION OF LEGISLATIVE AND JUDICIAL POWERS

The common-law tort of criminal conversation was abolished by the General Assembly of Tennessee as of January 1, 1991:

SECTION 1. On or after the effective date of this act, *no cause of action shall be maintained* that is based upon the common law torts of seduction or criminal conversation and such torts are hereby abolished. Nothing in this section shall be construed as prohibiting a cause of action based upon a sexual offense which offenses shall include, but not be limited to, those set out in Tennessee Code Annotated, Title 39, Chapter 13, Part 5.

SECTION 2. Tennessee Code Annotated, Section 28–3–104(a), is amended by deleting the words and punctuation "criminal conversation, seduction".

SECTION 3. Tennessee Code Annotated, Section 20–1–106, is repealed in its entirety.

SECTION 4. This act shall take effect on January 1, 1991, the public welfare requiring it, *provided any action filed prior to such date may be maintained under the law in effect on the date of such filing.*

Chapter 1056, Public Acts of Tennessee 1990 (emphasis added).

By the enactment of this statute, the ·General Assembly has declared that criminal conversation actions are offensive to the public policy of the state. The plaintiff argues, however, that Section 4 of the statute deprives this Court of the power to abolish criminal conversation actions filed prior to the effective date of the statute.

We find the plaintiff's argument unpersuasive for several reasons.

First, the General Assembly is without authority to enact a retrospective law, affecting vested substantive rights. Tenn. Const. art. I, § 20.[2] Where a statute alters the common law and results in deprivation of a valuable common-law right, such statute cannot constitutionally be applied retroactively. *See Massey v. Sullivan County,* 225 Tenn. 132, 464 S.W.2d 548 (1971).[3] It follows that a statute which expressly applied to previously-accrued common-law causes of action and purported to deprive the Court of its power to modify the common law, would be unconstitutional. We decline to adopt plaintiff's interpretation that Section 4 of the statute creates by implication legislation that would be unconstitutional if expressed. Consequently, we hold that the statutory exception for previously-filed actions was merely a legislative recognition of the constitutionally-required separation of legislative and judicial powers.[4]

Second, the statute contemplates the possibility that this Court would abolish criminal conversation actions as a matter of Tennessee common law. Section 1 provides that no cause of action "shall be *maintained*" after the effective date. As noted above, this language, taken alone, would render the statute unconstitutional. But Section 4 adds a saving clause which provides that "any action filed prior to [the effective date] may be maintained *under the law in effect on the date of such filing.*" (Emphasis added.) Determining

the status of the common law in effect on the date of filing is within the exclusive jurisdiction of this Court. Thus, the statute itself contemplates that the Supreme Court, not the Legislature, has the power to abolish a common-law tort retrospectively.

Finally, where the Legislature has not acted, we have not hesitated to abolish obsolete common-law doctrines. Indeed, we have a special duty to do so where it is the Court, rather than the Legislature, which has recognized and nurtured the action.

> It may be argued that any change in this rule should come from the legislature.... Legislative action could, of course, be taken, but we abdicate our own function, in a field peculiarly non-statutory, when we refuse to consider an old and court-made rule.

*Kilbourne v. Hanzelik,* 648 S.W.2d 932, 934 (Tenn.1983) (abolishing discriminatory rule denying liability of wife for support of husband); *Davis v. Davis,* 657 S.W.2d 753, 758 (Tenn.1983) (abolishing interspousal tort immunity doctrine). *See also Ford Motor Co. v. Lonon,* 217 Tenn. 400, 398 S.W.2d 240 (1966) (abolishing privity requirement in strict tort). Since the Court clearly has the power to consider old, court-made rules in the absence of statutory guidance, and since the Legislature may not constitutionally preclude such consideration, it would be anomalous for the Court to refuse such consideration where, as here, the Legislature has clearly expressed the public policy of the state.[5]

---

**2.** "No retrospective laws.—that no retrospective law, or law impairing the obligations of contracts, shall be made."

**3.** In contrast, retroactive application of judicial changes in the common law is a unique feature of common law adjudication. For example, in *Davis v. Davis,* 657 S.W.2d 753 (Tenn.1983), this Court abolished interspousal tort immunity, and applied its decision retrospectively:

> The trial judge was correct, under the then-existing law, in granting the motion for summary judgment. However, we have decided that the rule applied has been orphaned by logic and reason, and direct that the summary judgment be set aside and the matter remanded for further proceedings consistent with this opinion.

*Id.* at 759.

**4.** **Sec. 1. Division of powers.**—The powers of the Government shall be divided into three distinct departments: the Legislative, Executive, and Judicial.

> **Sec. 2. Limitation of powers.**—No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted.

Tenn. Const. art. II.

**5.** This is not to say that all legislation affecting common-law rights will be applied retrospectively by the Court. We hold only that such legislation does not deprive the Court of the power to modify common-law doctrines in pre-

For these reasons, we conclude that nothing in the abolishment statute—Chapter 1056 of the Public Acts of 1990—deprives this Court of its power to consider the viability of criminal conversation actions which accrued prior to the statute's effective date.

## ABOLITION

■ The defendant argues that we should follow the nationwide trend [6] and abolish the tort of criminal conversation.

In this case, the Western Section of the Court of Appeals found the reasoning of *Cannon v. Miller*, 71 N.C.App. 460, 322 S.E.2d 780 (1984), persuasive and recommended that the tort of criminal conversation be abolished:

Unarguably, the integrity of the marriage relation and the preservation of marital harmony are interests deserving of judicial protection. Yet, we find general agreement among the authorities who have examined the issue that, on balance, the social harm engendered by the existence of these torts and the actual counter productive affect of the ac-

tions on a marriage outweigh the meritorious goals purportedly served by the actions. We find the reasons advanced by the majority of judicial authorities, commentators and state legislatures for the abolition of these actions to be well founded and convincing. . . .

Apart from considerations of utility, we are persuaded that the very theory of recovery underlying [criminal conversations and alienation of affections] actions is without basis in contemporary society. The above actions have never fully shaken free from their property based origins, as evidenced by the fact that the consent of the participating spouse to the offending conduct, or even his or her initiation of it, will not bar the suit.

*Id.* 322 S.E.2d at 800–01 (citations omitted).[7]

In *Lentz v. Baker*, 792 S.W.2d 71 (Tenn. App.1989), the Eastern Section of the Court of Appeals extensively discussed the genesis of the actions for alienation of affections and criminal conversation, their susceptibility to abuse, and the reasons for abolishment. As they observed: Other states began to reject and limit the actions

viously-filed cases. Prospective legislation is a factor for our consideration, but is not dispositive of retrospective common-law adjudication.

**6.** The clear nationwide trend has been to abolish the tort of criminal conversation. At least thirty other jurisdictions, either through case law or by statute, do not recognize the cause of action of criminal conversation. Ala.Code Sec. 6-5-331 (1975); Cal.Civ.Code Sec. 43.5 (West 1982); Colo.Rev.Stat. Sec. 13-20-202 (1973); *Destefano v. Grabrian,* 763 P.2d 275, 279 (Colo. 1988); Conn.Gen.Stat.Ann. Sec. 52-572f (West Supp.1984); Del.Code Ann. tit. 10, Sec. 3924 (1974); D.C.Code Ann. Sec. 16-923 (1981); Fla. Stat.Ann. Sec. 771.01 (West 1964); *Harrington v. Pages,* 440 So.2d 521, 522 (Fla.App.1983); Ga. Code Ann. Sec. 51-1-17 (1982); *Hyman v. Moldovan,* 305 S.E.2d 648, 166 Ga.App. 891 (Ga.App. 1983); *Bilyk v. Chicago Transit Authority,* 531 N.E.2d 1, 7, 125 Ill.2d 230, 125 Ill.Dec. 822, 828 (Ill.1988); Ind.Code Ann. Sec. 34-4-4-1 (Burns 1973 & Supp.1984); Md.Cts. & Jud.Proc.Code Ann. Sec. 5-301 (1980); *Gasper v. Lighthouse, Inc.,* 533 A.2d 1358, 73 Md.App. 367 (Md.App. 1987); *Cotton v. Kambly,* 300 N.W.2d 627, 628, 101 Mich.App. 537 (Mich.App.1980); Mich. Comp.Laws Ann. Sec. 600.2901 (West 1968); Minn.Stat.Ann. Sec. 553.02 (West Supp.1984); *Larson v. Dunn,* 449 N.W.2d 751, 756 (Minn. App.1990); Mont.Code Ann. Sec. 27-1-601 (1983); Nev.Rev.Stat. Sec. 41.380 (1979); *Feld-*

*man v. Feldman,* 480 A.2d 34, 125 N.H. 102 (1984); *Zaragoza v. Capriola,* 492 A.2d 698, 201 N.J.Super. 55 (1985); N.J.Stat.Ann. Sec. 2A: 23-1 (West 1952); N.Y. Civ. Rights Law Sec. 80-a (McKinney 1976); *Cannon v. Miller,* 322 S.E.2d 780, 71 N.C.App. 460 (1984); Ohio Rev. Code Ann. Sec. 2305.29 (Page 1981); *Hardy v. VerMeulen,* 512 N.E.2d 626, 628, 32 Ohio St.3d 45 (1987); Okla.Stat.Ann. tit. 76, Sec. 8.1 (West Supp.1983–1984); Or.Rev.Stat. Sec. 30.850 (1983); *Com. v. Shoemaker,* 518 A.2d 591, 595, 359 Pa.Super. 111, 118 (1986); *Pickering v. Pickering,* 434 N.W.2d 758, 763 (S.D.1989); Tex.Fam. Code Ann. Sec. 4.05 (Supp.1984); *Lucas v. U.S.,* 757 S.W.2d 687, 711 (Tex.1988); Vt.Stat.Ann. tit. 15, Sec. 1001 (Supp.1984); Va.Code Sec. 8.01-220 (1984); *Lund v. Caple,* 675 P.2d 226, 100 Wash.2d 739 (1984); *Brown v. Thomas,* 379 N.W.2d 868, 127 Wis.2d 318 (1985); and Wyo. Stat. Sec. 1-23-101 (1977). *See* Comment, *Stealing Love in Tennessee: The Thief Goes Free,* 56 Tenn.L.Rev. 629, 656 (1989).

**7.** The North Carolina Supreme Court subsequently reversed and remanded for trial, holding that the intermediate appellate court had no authority to abolish the common-law tort. *Cannon v. Miller,* 313 N.C. 324, 327 S.E.2d 888 (1985).

in the 1920s. Legal writers were critical of the actions, citing their uncertain basis in damages and the fact that damages were largely punitive in nature. The writers felt the actions had no proper place in modern law in view of their history. The actions for alienation of affections and criminal conversation both originated in the husband's power over the wife. With the emancipation of the wife it was argued that the original basis for both of the actions was removed and should have resulted in their total abolition. Other reasons cited for change lie in the peculiar susceptibility to abuse that both actions are subject. Still another reason was the fact that the actions attract disproportionate publicity, encourage unfounded claims, and induce innocent defendants to enter into settlements. Many state legislatures which have abolished the action have cited these reasons. Legal writers have also commented that legislative abolishment occurred because of a recognition of changed social concepts of family solidarity and function. The statutes relax traditional legal controls by recognizing and protecting increased freedom of association between each spouse and the outside world. Professor Prosser has commented that the actions have "afforded a fertile field for blackmail and extortion by means of manufactured suits in which the threat of publicity is used to force a settlement." W. Prosser, *Law of Torts*, § 124 (1971).

As a result, in *Lentz*, the Court of Appeals recommended the abolishment of the tort of alienation of affection. It found that the action "diminishes human dignity, demeans the participants, inflicts pain upon the innocent, and does not prevent human misconduct." The court concluded:

> We are persuaded that in the final analysis, the action does not protect marriage or the family—its only real justification—and the harm it causes far outweighs any reason for its continuance. It should be abolished....

*Id.* at 76. Although the Court of Appeals was primarily addressing the action of alienation of affection, the same analysis and the same reasons for abolishment apply to the action of criminal conversation.

In both cases, the Western and Eastern Sections of the Court of Appeals nevertheless concluded that as intermediate appellate courts, they were bound by present law. Both courts urged the abolishment of the torts. Shortly after each Court of Appeals' decision, the Tennessee General Assembly acted first in 1989 to prospectively abolish alienation of affections and again in 1990 to prospectively abolish criminal conversation.

We wholeheartedly agree with the Court of Appeals and the Legislature that the tort of criminal conversation is obsolete and should be abolished in Tennessee.

We are not unmindful of the precedential value of previous Tennessee cases.

> [O]ur commitment to *stare decisis* remains strong. Confidence in our courts is to a great extent dependent on the uniformity and consistency engendered by allegiance to *stare decisis*. However, mindless obedience to this precept can confound the truth and foster an attitude of contempt.

*Davis v. Davis*, 657 S.W.2d 753, 758 (Tenn. 1983). As a live and breathing thing, the law changes when necessary to serve the needs of the people. When this basic purpose of the law is slighted or overlooked, then it loses a high degree of its majesty. *Powell v. Hartford Accident & Indemnity Co.*, 217 Tenn. 503, 398 S.W.2d 727, 732 (1966). "Where the reason fails the rule should not apply." *Brown v. Selby*, 206 Tenn. 71, 332 S.W.2d 166, 169 (1960).

Because we find that the reasons for the cause of action no longer exist, and because the public policy of the state, as expressed by the Legislature, is offended by criminal conversation actions, we hold that the common-law tort of criminal conversation is hereby abolished in Tennessee. Consequently, we reverse the judgment of the Court of Appeals and dismiss this action. Costs are taxed to the Appellee.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.