**In re Appeal of Alfie COATS.**

Superior Court of Pennsylvania.

Submitted Aug. 18, 2003.

Filed April 19, 2004.

Wendy Hess, Baltimore, MD., and David L. Glassman, Lewisburg, for Public Justice, Amicus Curiae.

David C. Cleaver, Chambersburg, for Register of Wills, appellee.

Before: FORD ELLIOTT, BOWES & TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Alfie Coats appeals *pro se* from the February 6, 2003 Order denying and dismissing his appeal from the orphans' court's refusal to issue him a marriage license without his personal appearance.[1]

¶ 2 Appellant is an indigent prisoner at the State Correctional Institution at Mahanoy (SCI Mahanoy) in Schuylkill County. When his fiancée went to the office of the clerk of the orphans' court of Schuylkill County to obtain a marriage license, the clerk would not accept an application because appellant was unable to personally appear at the clerk's office. Appellant and his fiancée appealed that determination.

¶ 3 The trial court issued a citation to the clerk of the orphans' court to show cause why appellant should not be allowed to apply for a marriage license other than by his personal appearance in the clerk's office. Record No. 101/335. At a February 4, 2003 hearing it was indicated the clerk was acting in compliance with 23 Pa.C.S.A. § 1306, **Oral examination,**[2] which requires marriage license applicants to appear in person. It was also revealed that SCI Mahanoy would allow appellant to appear through video conferencing,[3] but that the orphans' court does not have video conferencing technology. Moreover, the orphans' court had insufficient staff and

---

1. Although no appellee's brief was filed in this matter, the *Amici Curiae* Public Justice Center, Pennsylvania Institutional Law Project, and Lewisburg Prison Project, did file an amicus brief in support of appellant.

2. 23 Pa.C.S.A. § 1306, **Oral examination,** provides

   Each of the applicants for a marriage license *shall appear in person* and shall be examined under oath or affirmation as to:
   (1) The legality of the contemplated marriage.
   (2) Any prior marriage or marriages and its or their dissolution.

   (3) The restrictions set forth in section 1304 (relating to restrictions on issuance of license).
   (4) All the information required to be furnished on the application for license as prepared and approved by the department. (Emphasis supplied.)

3. According to the Department of Corrections Policy Statement, for security reasons the department will not transport inmates to personally appear to apply for a marriage license but allows inmates to apply via video conferencing technology if available and approved by the court, and allows for the interview to be conducted at the corrections facility. Record No. 101/333.

funds to examine appellant at SCI Mahanoy. SCI Mahanoy would allow appellant to be transported to the clerk's office but would not provide the transportation. The Schuylkill County Sheriff's Department would transfer appellant but would require appellant to pay a fee to cover expenses, which appellant and his fiancée could not afford to pay. Unable to obtain a marriage license, appellant filed this timely appeal which raises one issue for our consideration.

Can a clerk of the orphans' court division of a court of common pleas refuse to travel to a prison within its jurisdiction to interview a marriage license inmate applicant lacking funds to pay the county sheriff for transport to the county courthouse for the interview?

Appellant's brief at 4.

¶ 4 Specifically, appellant (and *amici*) argues the fundamental constitutional right to marry extends to prisoners. *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). He asserts the Schuylkill County Clerk of the Orphans' Court violated his fundamental right by refusing to issue a marriage license to his fiancée and him absent his personal appearance. He states that neither he nor his fiancée can afford to pay the sheriff to transport him to the clerk's office and argues that county officials may not erect economic barriers to such fundamental rights. Further, he contends the county must provide the orphans' court clerk with all necessary accommodations, goods and services, (*see* 42 Pa.C.S.A. 2774(b) **infra**) and that video conferencing technology is a necessary accommodation or service. He also contends it is reasonable and feasible for the clerk or a representative to periodi-

cally visit area prisons for the purpose of issuing licenses. In fact, he argues *Turner* requires the clerk to do so. He asks this Court to reverse and remand with instructions to issue a writ of mandamus or other relief to compel the clerk of the orphans' court to conduct a marriage license examination of appellant at SCI Mahanoy or by video conferencing technology.

¶ 5 The trial court agrees that 23 Pa. C.S.A. § 1306 requires marriage license applicants to appear in person but would not impose the burden upon the clerk to maintain sufficient staff to travel to area prisons for that purpose.[4] It found no basis in law upon which to conclude the clerk of the orphans' court is required to entertain applications at any location other than its place of business. The court concluded appellant's dispute was with the Department of Corrections which it reasoned could provide transportation to the clerk's office as easily as could the county sheriff's office, but speculated it chose not to do so based upon security concerns and a lack of manpower. Judge Baldwin points out that it is not the duty of the Orphans' Court or the people of Schuylkill County to get the prisoner to the marriage license department, but rather the duty, if one exists, of the Department of Corrections, which was not a party to this action. *See* Trial Court Opinion, Baldwin, P.J., 2/6/03, at 2. Since prisoners in various state institutions are placed through the prison diagnostic system throughout the state of Pennsylvania, it appears inappropriate for some counties, due to policy decisions concerning location of prisons, to have an unusual if not overwhelming burden of providing certain services. Amicus would respond that they get the benefit of

---

4. Apparently recognizing the potential burden of requiring the orphans' court to entertain marriage license applications at locations other than its place of business, the trial court noted there are two state prisons, one federal prison and one county prison in Schuylkill County.

jobs and other expenditures which offset the burden. This does not, however, solve the problem of how best to accommodate this activity within the available resources and needs of a multifunctional system.

■■■ ¶ 6 We are beyond the underlying consideration as to whether prisoners have a fundamental constitutional right to marry—they do. *Turner, supra.* The facts and legal ramifications in *Turner* are distinguishable from those involved in this case, however, and the factual situation here is **not** in anyway comparable to *Little v. Streater,* 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981) (blood tests for paternity actions), *Zablocki,* (denial of marriage license if arrears exists on child support). *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (fees for divorces), or *Loving,* (interracial marriages). The issue *not* addressed by *Turner* is whether under the totality of all circumstances involved in operating a prison, court offices and law enforcement agencies, that right can be enforced irrespective of the cost to the ancillary services which have no statutory responsibility to assure that the prisoner and his/her partner get to the marriage license bureau door. These functions of the court, administrative, prison and law enforcement entities (i.e.sheriffs) have no legal duty to assure a prisoner obtains a marriage license. For this Court to direct one of those entities to engage in an activity which would entail unknown expenditures of money, manpower and security concerns and which would divert funds and resources beyond their statutory mandate and in all likelihood, beyond their present budgetary resources at a time when all levels of government are on the verge of bankruptcy is inappropriate. The problem, if there is one, should not be resolved by the courts, as at best we would be called to manage a diverse and desperate number of entities involving different locations, a multiplicity of prisons in a wide array of counties and prisoners of different financial means some of whom could underwrite their own costs while others would be required to proceed *in forma pauperis.* Any solution we would decree the trial court to apply only could be directed to *one* case, in *one* prison, in *one* county, as to *one* marriage license office. This matter cannot be resolved properly in such a fashion. The only entity which can mandate a uniform statewide proceeding and remedy is the legislature. If it is to be a court-mandated solution, the remedy must flow from the power of the Pennsylvania Supreme Court as monitor of the Unified Judiciary to make a uniform and binding rule for the implementation of an acceptable procedure in the Orphans' Courts of Pennsylvania. Of course, the Department of Corrections could likewise, as the custodian of the prisoners, become involved in a resolution of this problem statewide by a change in policy.

■■■ ¶ 7 We also recognize Pennsylvania statutory law requires parties to obtain a marriage license before marrying, 23 Pa.C.S.A. § 1301, **Marriage license required,** (a) **General rule,** and Section 1306, **Oral Examination,** requires a marriage license applicant to appear in person to be examined under oath. Although compliance with this statutory mandate, combined with present circumstances, prevents appellant from exercising his constitutional right, we are unable to grant appellant the requested relief.

Mandamus is an extraordinary writ that will only lie to compel official performance of a ministerial act or mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and want of any other appropriate and adequate remedy. A decision to deny mandamus is subject

to reversal only for abuse of discretion. A decision that a plaintiff has failed to state a cause of action in mandamus, however, is subject to plenary review, inasmuch as the lower court has decided that the complaint, as a matter of law, does · not make out a claim for relief. *Jackson v. Vaughn,* 565 Pa. 601, 604–605, 777 A.2d 436, 438 (2001).

¶ 8 We cannot find the trial court abused its discretion in denying appellant the requested relief since we are unable to find the clerk owes appellant a duty to implement video . conferencing technology or to travel to area prisons to conduct examinations. The orphans' court clerk simply performs its ministerial duty in accordance with the statutory mandate that requires applicants to appear in person. There is nothing express or implied in the marriage license statutes that requires the clerk of the orphans' court to visit prisons for the purpose of issuing marriage licenses. Imposition by this Court of a duty on the county to somehow get a prisoner to the marriage license office if he/she desires to marry could open the door for persons of any disability (real or imagined), including those bedridden, institutionalized and/or unable to travel, to demand similar treatment. Surely, *Turner, supra,* never intended that its ruling in 1987 was to be extrapolated to provide prisoners to be accommodated regardless of cost or security problems to comply with the ministerial requirements of obtaining a marriage license. As a class action to review the constitutional rights of prisoners to marry, *Turner* simply declared that prisoners retain the right to marry and can not be denied that right incident to security concerns due to prison administrative policy. In such a case the court had the power to declare the existence of a constitutional right whereas here, the court lacked the power to declare which of several governmental entities with no legislative man-

date, had the duty to perform a service. As such, the trial court in this matter correctly reviewed the evidence against the standard required for mandamus actions and found it had no authority to act.

■ ¶ 9 The office of the clerk of the orphans' court is not *sui juris* but is dependent on county and legislative provisions to implement its function. This statutory mandate provides as follows:

**42 Pa.C.S.A. § 2774. Office of the clerk of the orphans' court division**

**(a) General rule.**—There shall be an office of the clerk of the orphans' court division in each county of this Commonwealth, which shall be supervised by the clerk of the orphans' court division of *the county who shall, either personally, by deputy, or by other duly authorized employees or agents of the office,* exercise the powers, and perform the duties by law vested in and imposed upon the clerk of the orphans' court division or the office of the clerk of the orphans' court division.

**(b) Facilities and services.**—The office of the · clerk of the orphans' court division shall be provided with all necessary accommodations, *goods and services pursuant to section 3722 (relating to general facilities and services furnished by county).*

*Id.* (emphasis supplied).

¶ 10 The powers and duties of the office of the clerk of the orphans' court division are detailed in 42 Pa.C.S.A. § 2777, **Powers and duties of the office of the clerk of the orphans' court division.** Nothing in the statutory mandate or detailed powers and duties of the orphans' court clerk provides for an off site or traveling function, nor is there any provision to order, direct or authorize payment to transport persons, regardless of disability, to the orphans' court office to accommodate the

issuance of any license or service provided by law by the orphans' court. In addition, the law limits the extent and degree to which the orphans' court or any judicial office can establish duties and compensation of the staff of the clerk of orphans' court and can only do so "... as otherwise provided by statute or home rule charter or optional plan of government ... and where fixed by a county salary board ... with the clerk as a member of the salary board." 42 Pa.C.S.A. § 2275(c), **Compensation and duties.**

¶ 11 As a further limitation to the power of the clerk of orphans' court, indeed to the power of the trial court to provide staff, facilities and services deemed necessary, legislation clearly and specifically delineates the interrelationship and responsibility *vis a vis* the courts and local government financial responsibility as to

expenditures for court facilities and services. *See* 42 Pa.C.S.A. § 3702, **General facilities and services furnished by Administrative Office;**[5] **§ 3722, General facilities and services furnished by county;**[6] **§ 3723, Other facilities and services furnished by Administrative Office;**[7] **§ 3725, Standards of local facilities and services;**[8] **§ 3726, Manner of expenditure of local funds;**[9] **and § 3727, Restriction on compelling local action.**[10]

¶ 12 A careful reading of these empowering statutory provisions clearly leads to the following conclusions:

1. Orphans' court is solely responsible for obtaining the authenticated marriage license and fulfilling the legislation requirement or its equivalent of a personal interview with an applicant for a marriage license (prisoner or otherwise).

5. "The Administrative Office, ... through the Department of General Services, shall furnish all personnel of the system entitled thereto with all necessary accommodations, goods and services which are not required by statute to be furnished by another government unit. Nothing in this section shall be construed to shift the liability for furnishing any such necessary accommodations, goods and services to the Commonwealth and where it is necessary for the Administrative Office to furnish any such necessary accommodations, goods or services for which the Commonwealth is not liable the cost thereof shall be paid by the defaulting government unit."

6. "[E]ach county shall continue to furnish to the court of common pleas ...including central staff entitled thereto, ... all necessary accommodations, goods and services which by law have heretofore been furnished by the county."

7. "The Administrative Office, either directly or where appropriate in the case of equipment, materials and supplies, through the Department of General Services, shall furnish all personnel of the system entitled thereto located within a county, with all necessary accommodations, goods and services, which are not by section 3722 (relating to general facilities

and services furnished by county) or any other provision of statute required to be or which have heretofore been furnished by another government unit."

8. "All accommodations, goods and services furnished to personnel of the system by a county or any other government agency shall be furnished in conformity with general rules."

9. "Unless and until otherwise provided by statute or by express order of the Supreme Court pursuant to and subject to the limitations of constitutional authority, the manner of expenditure of moneys credited to the judicial and related account of a political subdivision, including moneys appropriated through the budget of the Judicial Department to a political subdivision, shall be within the control of officers of the political subdivision."

10. "A general rule ... shall not be effective as to such political subdivision unless the governing body of the political subdivision agrees thereto or is specifically required by statute to take the action or furnish the particular funds, accommodations, facilities, goods or services to which the general rule, express order or other order relates."

2. Orphans' court cannot order sheriffs deputy or prison staff to assume the duty and expense of transporting prisoners to the orphans' court clerk to interview for a marriage license.

3. Any additional staff or expense incurred by orphans' court in fulfilling this duty can only be accomplished, in cooperation and by agreement of the political subdivision which would be required to furnish the additional staff or service. § 3727, **Restriction in compelling local action,** § 3726, **Manner of expenditure of local funds.**

4. The Administrative office of the Pennsylvania Courts has the power and authority to provide additional resources to the orphans' court, which are not supplied by § 3722 (relating to general facilities and services furnished by the county) such as video conferencing, which is akin to the computer network recently implemented for the judiciary.

5. The Administrative Office of the Pennsylvania courts as well as the Administrator of the Common Pleas Courts has the authority to deputize prison personnel for the purpose of conducting onsite § 1306 marriage license interviews, alternatively district justices or senior district jus-

tices may also be empowered for this purpose by the court administrator of the county.

6. As a statewide solution and establishing a uniform practice, the orphans' court rules promulgated by the Supreme Court can create a practice mandated for use in all judicial districts.

7. Finally, the legislature should be urged to consider this issue and to amend the statute to facilitate the issuance of marriage licenses under this impediment as well as other disabilities which might exist.

¶ 13 While we acknowledge action should be taken to allow appellant to exercise his fundamental right to marry, we agree with the trial court and conclude we have no basis upon which to compel the clerk of the orphans' court in Schuylkill County to take the requested action.[11] In the absence of special treatment of any other disabled class who, like appellant, cannot appear personally before the clerk of the orphans' court to obtain a marriage license, we perceive no due process or equal protection violation under the facts of this case.

¶ 14 The search for a solution requires that we remand this matter to the trial court for an evidentiary hearing to determine the least costly method to achieve the necessary face to face interview. Con-

**11.** We note that the Department of Corrections could assist appellant in exercising his constitutional right to marry by changing its policy and providing transportation to the clerk's office. Alternatively, our legislature could carve out a waiver for the personal appearance requirement not only for members of society who are incarcerated but also for those who, due to physical disability or illness, are unable to appear personally. For example, Ohio waives its personal appearance requirement for marriage license applicants who are ill or disabled but provides no waiver for incarcerated individuals. *See,* Ohio Rev. Code Ann. § 3101.05(A); *Toms v. Taft,* 338

F.3d 519, 522 (6th Cir.2003). Further, the clerk of the orphans' court could deputize an employee of the Department of Corrections at SCI Mahanoy as a clerk to issue marriage licenses. *Id.* at 522–523. In *Toms,* an inmate sued various state officials when he was prevented from obtaining a marriage license under an Ohio statute which had a personal appearance requirement similar to the one at issue here. The parties settled prior to trial when it was agreed the county probate court would deputize an employee of the state department of rehabilitation and correction as a clerk to issue the marriage license at the facility where the plaintiff was incarcerated.

siderations should include, but are not limited to, the viability of video conferencing, deputization of prison personnel to conduct the marriage license interview, or the assignment of a clerk or district magistrate to travel to the various correctional facilities within the county for the purpose of conducting the required interview. Each of these methods has been applied successfully in other jurisdictions, and with a degree of cooperation and willingness to accommodate the general intent of constitutional mandates, a solution is available.

¶ 15 Order vacated; case remanded for a hearing and entry of an Order in conformity with this Opinion within 60 days of its filing.[12]

¶ 16 Jurisdiction relinquished.

¶ 17 BOWES, J., files a Dissenting Opinion.

## DISSENTING OPINION BY BOWES, J.:

¶ 1 I respectfully dissent. Observing that we are an error-correcting court, I cannot agree with the majority's decision to vacate the trial court's order and remand for a second evidentiary hearing while expressly sustaining the trial court's legal reasoning.

¶ 2 I would hold that the trial court erred in finding that the Schuylkill County Clerk of the Orphan's Court (the "Clerk") was not required to make an accommodation due to Appellant's inability to personally appear in the Clerk's office and apply for a marriage license. I believe the Clerk was obliged to provide an alternative method for Appellant to exercise his fundamental, constitutional right to marry, and consequently, the Clerk's failure to accommodate Appellant was unconstitutional. I would therefore reverse.

¶ 3 Appellant argues that the Clerk's strict application of 23 Pa.C.S. § 1306, requiring a marriage applicant's personal appearance for an oath and examination, effectively denies Appellant the ability to exercise his fundamental right to marry.[13] I agree. I believe the Clerk's interpreta-

12. The dissent agrees with the majority that there is a constitutional right to marry, *see* *Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) and *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). The majority, however, cannot find that such a right as to prisoners, in accordance with *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), implicates the standard of strict scrutiny as do *Loving* and *Zablocki* but among other considerations, *does* involve the demands of running a complex and dangerous institution such as a prison. The dissent has failed to acknowledge the magnitude of the problem as illustrated by a description of the Pennsylvania Department of Corrections and the responsibility of its secretary. Pursuant to statute, the Office of the Secretary is responsible for supervision of the entire adult correction system,

including 25 institutions, 14 community corrections centers, 46 contract facilities, and one motivational boot camp. The Secretary directly supervises the executive deputy secretary and the directors of the Press Office, the office of Legislative Affairs, the Office of Professional Responsibility, and the Bureau of Management Information Services. The Department's chief counsel is supervised by the Secretary through the Governor's Office of the General Counsel. 2001 Pa. Manual 4–38. In addition, there are several federal prisons located in Pennsylvania which are operated by the United States Justice Department, Bureau of Corrections, and local prisons which serve each of the 67 counties of Pennsylvania. Again, it becomes a matter of expenditure of manpower, concerns for security and an activity which is not essential to the operation of the prison or to fulfill the requirements of court appearances for trial and related matters.

13. The statute provides as follows:

§ 1306. **Oral examination**

tion of the law is incorrect and that office's refusal to provide an adequate alternative for prisoners incarcerated in Schuylkill County to secure marriage licenses impermissibly infringes on their constitutional rights.

¶ 4 At the outset, I disagree with the majority's conclusion that no constitutional violations arise under the facts of this case.[14] It is settled that marriage is a fundamental right under both the United States Constitution and the Pennsylvania Constitution. *Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) (right to marry is part of fundamental right of privacy implicit in Fourteenth Amendment's due process clause); *Fabio v. Civil Service Commission of City of Philadelphia,* 489 Pa. 309, 414 A.2d 82 (1980) (constitutional right to privacy encompasses activities relating to marriage). It is also clear that the manner in which the Clerk has elected to perform its ministerial duties encroaches upon Appellant's right to marry. *Cf.* ˙ *Finberg v. Sullivan,* 634 F.2d 50 (3d Cir.1980) (recognizing that county officials can be defendants to con-

stitutional challenge although their duties were entirely ministerial). "The inquiry is not on the nature of an official's duties but into the effect of the official's performance of his duties on the plaintiff's rights." *Id.* at 54. Unlike the majority, I would not artificially impute the duty to accommodate Appellant upon the Pennsylvania Department of Corrections or the local sheriff. The legislature designated the task of regulating marriage licenses to the Orphans' Court, *see* 20 Pa.C.S. § 711(19), and the various clerks of the Orphan's Court are obliged to perform their duties in a constitutionally fit manner.

¶ 5 Furthermore, I do not believe that the deferential standard employed by the United States Supreme Court in *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), is applicable to the case *sub judice.* In *Turner,* the Supreme Court held that a Missouri prison regulation barring prisoners from marriage absent a compelling reason to do so was constitutionally infirm. The Court fashioned the following test to determine the regulation's constitutional fitness: "[W]hen

---

Each of the applicants for a marriage license shall appear in person and shall be examined under oath or affirmation as to:
(1) The legality of the contemplated marriage.
(2) Any prior marriage or marriages and its or their dissolution.
(3) The restrictions set forth in section 1304 (relating to restrictions on issuance of license).
(4) All the information required to be furnished on the application for license as prepared and approved by the department.
23 Pa.C.S. § 1306. A statute is not unconstitutional unless it clearly, palpably, and plainly violates the constitution. *Commonwealth v. Mayfield,* 574 Pa. 460, 832 A.2d 418 (2003). The statute at issue herein is unquestionably constitutional on its face. Since the state has the authority to restrict marriages under its police power, it is within its rights to require applicants to comply with registration and licensing requirements. *See May-*

*nard v. Hill,* 125 U.S. 190, 8 S.Ct. 723, 31 L.Ed. 654 (1888) (recognizing marriage as a social relationship governed by individual states under police power); *Commonwealth v. Shoemaker,* 359 Pa.Super. 111, 518 A.2d 591 (1986). (right to privacy inherent in marriage is not unrestricted but subject to state's police power). The constitutional deprivation in this case springs from the Clerk's strict interpretation of the personal appearance requirement and its refusal to provide a reasonable alternative.

**14.** The majority reasons that since Appellant, an indigent prisoner, is not a member of a suspect class, there is no equal protection violation in this case. While I agree that the facts of this case do not implicate equal protection, as noted in the discussion *infra,* the denial of a fundamental right alone is sufficient to justify a substantive due process analysis. *See Nixon v. Commonwealth,* 576 Pa. 385, 399–401, 839 A.2d 277, 287 (2003).

a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89, 107 S.Ct. 2254. This test, which places the burden upon the prisoner, has been employed consistently to determine the validity of various prison regulations. *See Overton v. Bazzetta,* 539 U.S. 126, 132, 123 S.Ct. 2162, 2168, 156 L.Ed.2d 162 (2003). However, this standard only applies to prison regulations. As the *Turner* Court did not address the effect that a regulation would have upon outside entities, the standard does not extend to state actions beyond the prison walls. Since the rule in question is not a prison regulation and was not implemented to further a penological interest, the deferential "legitimate interest" standard employed in *Turner* is inapposite.

¶ 6 Instead, this matter demands strict scrutiny. Pursuant to the due process guarantees in the Fourteenth Amendment to the United States Constitution and Article I, Section 1 of the Pennsylvania Constitution, strict scrutiny applies to the denial of the fundamental right to marry. *Nixon v. Commonwealth,* 576 Pa. 385, 400, 839 A.2d 277, 287 (2003) ("Where laws infringe upon certain rights considered fundamental, such as the right to privacy, the right to marry, and the right to procreate, courts apply a strict scrutiny test."). This standard, referred to as a substantive due process analysis, utilizes a means-ends test to scrutinize the relationship between the fundamental right and the interest sought to be achieved. *Id.* When applying strict scrutiny, the courts will uphold an interference with the free exercise of a fundamental right only if it is necessary to promote a compelling or overriding state interest, and if a compelling interest exists, the means necessary to effectuate that interest must be narrowly tailored to achieve the objective. *Khan v. State Board of Auctioneer Examiners,* —— Pa. ——, ——

——, 842 A.2d 936, 942–43 (2004). Laws restricting fundamental rights rarely survive strict scrutiny. *See Burson v. Freeman,* 504 U.S. 191, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992).

¶ 7 Considering section 1306 under the first prong of the standard, it is well established that the state has a compelling interest in regulating marriages and requiring applicants to obtain marriage licenses. *See Zablocki, supra* at 386, 98 S.Ct. 673 ("reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed."). The legislature's mandate for a marriage applicant to appear personally for an oath or affirmation is constitutionally fit on its face. However, I believe the Clerk's interpretation of the statute is incorrect, and its chosen method of achieving the state's objective is not sufficiently narrow to allow prisoners to exercise their fundamental right to marry.

¶ 8 Contrary to the Clerk's reading of the statute, section 1306 does not require a marriage license applicant to appear at the courthouse in person nor does it preclude qualified individuals outside of the Clerk's office from administering the oath and examination. Consequently, the Clerk's strict construction of the personal appearance requirement, which demands a personal appearance at the Schuylkill County Courthouse for an oath and examination performed by a representative of the Clerk's office, is improper, and in this case, it results in an unconstitutional divestiture of Appellant's fundamental right to marry.

¶ 9 In support of its interpretation of the personal appearance requirement, the Clerk contends that it has inadequate staff to send a representative to each of the four prisons within Schuylkill County to conduct the required interviews upon the demand of the prisoner-applicants, and that

it has insufficient funds to obtain the technology which would enable it to conduct video-conferences with prisoner-applicants.[15] Nevertheless, I believe the Clerk could fashion and employ a reasonable alternative that would both comply with the legislature's mandate and allow prisoners to exercise their rights without burdening Schuylkill County taxpayers. Further, as we are constrained to apply strict scrutiny, the majority's concerns relating to the number of prisoners housed in correctional institutions and support facilities within our borders are irrelevant to our analysis. Having found that a compelling interest exists, our only concern is whether there are less restrictive means of accomplishing the state's objective. In this case, several alternatives exist.

¶ 10 As Appellant and *amici curiae* suggest, there are several low-cost alternatives that would accommodate Appellant's rights. First, the Clerk's office could schedule periodic trips to prisons within Schuylkill County to conduct examinations and issue marriage licenses two or three times a year. Since the examinations would be performed at predetermined intervals rather than at the prisoners' request, the cost associated with this service would be minimal. Similarly, the Clerk could deputize a corrections employee at each of the four institutions and have them administer the oath and examination. *See Toms v. Taft*, 338 F.3d 519 (6th Cir.2003) (county probate court deputized corrections employee to administer oath and issue marriage license). Alternatively, as section 1306 does not limit who may conduct the sworn examination, the Clerk could accept affidavits that were sworn, attested, and notarized at the prison and then mailed to the Clerk's office. All of these viable accommodations would allow prisoners within Schuylkill County to exercise their rights without imposing significant costs upon the Clerk or the county and its taxpayers. The existence of these affordable alternatives militates against a finding that the Clerk's reading of the law is narrowly tailored to achieve the state's objective. Accordingly, I would find that the Schuylkill County Clerk of Orphans' Court policy is unconstitutional.

¶ 11 The majority posits that the enumerated powers and duties of the Clerk of the Orphans' Court do not include providing the suggested accommodations,[16] and consequently, it opines that the Clerk cannot be compelled to accommodate Appellant. I believe this argument fails to grasp the nature of the issue. It is not a matter of who is best suited to provide Appellant with access to a marriage license; rather, the question is what entity is precluding Appellant from obtaining a marriage license and exercising his right to marry. Under the facts of this case, that entity is the Clerk of the Orphans' Court in Schuylkill County.

¶ 12 Although the Clerk does not have a statutory mandate to provide a specific reasonable accommodation to prisoners seeking a marriage license, the legislature's omission does not negate the Clerk's responsibility as a state actor to perform its ministerial duties without treading upon the fundamental rights of others. *See Finberg, supra.* Since 23 Pa.C.S. § 1306

---

15. While some prisoners can comply with the Clerk's personal appearance requirement because they can afford to pay the Schuylkill County Sheriff's Department to transport them to the Clerk's office, Appellant cannot meet that requirement. No alternative exists to accommodate indigent prisoners.

16. *See* 42 Pa.C.S. § 2777 Powers and duties of the office of the clerk of the orphans' court division.

neither requires that an applicant appear at the county courthouse nor precludes other qualified individuals from examining applicants outside of the Clerk's office, I believe the Clerk's interpretation of the statute is unduly restrictive and its refusal to provide a reasonable alternative to the personal appearance requirement is unconstitutional.

¶ 13 Accordingly, I dissent.